KHRISTYNE TRUAX KRUEGER, APPELLEE, V. STEVEN JACKIE KRUEGER, APPELLANT.

319 N.W.2d 445

Filed May 14, 1982.  No. 44503.

A. James McArthur, for appellant.

Richard H. Osborne, for appellee.

Heard before KRIVOSHA, C.J., BOSLAUGH, McCOWN, WHITE, HASTINGS, and CAPORALE, JJ., and BRODKEY, J., Retired.

PER CURIAM.

This is a proceeding to modify a decree of dissolution of marriage by changing custody of the parties' minor son from the mother to the father. The District Court found that the father had not met his burden of proof to justify modification of the decree, but placed legal custody of the minor child in the court and physical custody with the mother. The father has appealed. The sole issue is the custody of the minor child.

Steven Jackie Krueger and Khristyne Truax were married in 1975. Khristyne was 16 and Steven was 19 years old. Jeremy Paul Truax was born in February 1975. Shortly after the marriage and birth of the child, Steven was incarcerated in the Nebraska Penal Complex on a conviction for assault and a sub-

sequent conviction for attempted escape.

Khristyne filed her petition for dissolution of marriage in November 1976. Steven filed a voluntary appearance while still incarcerated. The decree of dissolution of marriage was entered January 26, 1977. The decree granted permanent custody of Jeremy to Khristyne, with reasonable rights of visitation to Steven.

Khristyne and Jeremy lived with a man named Keane in Lincoln, Nebraska, for a time and moved to Denver, Colorado, with him in 1977. While in Denver with Keane, Khristyne began work as a prostitute. Khristyne married Keane and later divorced him. In 1977, while in Colorado, Khristyne met a man named McKenzie. Khristyne, Jeremy, and McKenzie moved to California sometime in 1977 and lived together for approximately 2 years. During this time Khristyne engaged in and ran a prostitution ring and she and McKenzie were both users of drugs. McKenzie had a son approximately Jeremy's age who lived with them, and McKenzie physically beat Khristyne, his own son, and occasionally Jeremy. Sometime early in 1979 Khristyne took Jeremy and moved to Colorado in an attempt to hide from McKenzie. In Colorado she again worked in a house of prostitution until she was injured in a barroom brawl in October 1979.

Meanwhile, Steven was released from the penal complex in March 1978 and sometime thereafter went to work for the railroad company as an operating employee. Sometime in 1979 Steven located Khristyne and Jeremy in Colorado and visited them several times over the next few months. In November of 1979, while Steven was visiting Khristyne in Colorado, they agreed that Steven could take Jeremy to Lincoln, Nebraska, for a 2-week visit, and Steven and Jeremy returned to Lincoln. Before the 2 weeks were up, McKenzie came to Colorado and threatened Khristyne. She telephoned Steven re-

questing that Jeremy be returned immediately, but Steven did not return Jeremy and sought the advice of his attorney.

Khristyne returned to California with McKenzie and married him on January 10, 1980. She testified that she married McKenzie because he and his friends in California thought it would improve her chances to get Jeremy back. Sometime in 1980, when Khristyne had gone to Colorado again, McKenzie came to Colorado, threatened Khristyne at gunpoint, and left her handcuffed to her bed until she was found by the police. Khristyne has habitually carried a gun since that occasion but has not seen McKenzie since then.

On April 15, 1980, Steven filed a motion for temporary custody and an application for modification of the original decree in the District Court for Lancaster County, Nebraska. The motion and application prayed for a continuation of the physical custody of Jeremy, a grant of temporary custody following hearing, and requested modification of the original decree by changing the custody of Jeremy from Khristyne to Steven on the basis of some of the facts set out above. Following a hearing on the motion on April 21, 1980, at which Khristyne and McKenzie appeared, the District Court found that the court should assume legal custody of Jeremy and that physical custody should be given to Steven until the further order of the court. The court further found that a custody investigation should be undertaken by the court investigator and directed both parties to cooperate with such investigation. The court also appointed a guardian ad litem for Jeremy.

On June 30, 1980, upon the motion of the guardian ad litem reciting that he had been unable to obtain a custody investigation of Khristyne from Colorado, the District Court entered an order directing a custody investigation of Khristyne's home, living ar-

rangements, and other relevant factors in Colorado. Various pleadings, interrogatories, and motions were filed in preparation for trial, and a psychologist was appointed by the court to make a special investigation and report. The matter was tried over a 3-day period in July 1981.

Essentially the evidence at trial showed that since November 1979 Steven had taken care of Jeremy, first at his mother's house and later at a rented house in Lincoln, Nebraska. The record indicates that Jeremy was healthy, well clothed and fed. Jeremy was in kindergarten during the fall semester of 1980 and the spring semester of 1981, and his report card showed satisfactory progress and effort in all school subjects, although it also indicated some problems in personal and social growth. Steven took care of Jeremy himself when he was not working, and when he was called to work, Jeremy was taken care of by one of the teachers' aides at the school which he attended. She had three children of her own at home, and presumably Jeremy was cared for along with them.

The record established that although Steven had been employed by the railroad company since his release in 1978, he had little seniority and on some occasions would not be called to work for several weeks. The record also showed that he had some problems with alcohol and had been convicted of driving while intoxicated on one occasion and jailed for 17 days while he had custody of Jeremy.

The psychologist appointed by the court testified that it was an unusually complicated case and that attempting to predict future behavior is uncertain at best, but that, in his opinion, Khristyne was the more capable parent of the two. The psychologist felt that a man named Verner, with whom Khristyne had been living for over a year, was a stable influence in her life and that she was better able to communicate with Jeremy than Steven. The psy-

chologist felt that Steven, because of his lack of a family background, had a difficult time trusting, loving, or communicating with anyone on a happy, stable family level. The psychologist testified that both Khristyne and Steven loved the child in their own way.

The guardian ad litem recognized the fact that the circumstances of both Khristyne and Steven had changed since the date of the original decree and that projection of the future was difficult. The guardian recommended that under all the circumstances Jeremy's custody should be placed in Lincoln with Steven, but recommended that the custody be monitored very closely. Both the psychologist and the guardian ad litem expressed the view that custody of Jeremy should not be given to the Department of Public Welfare for foster home placement but, instead, should be awarded to one or the other of the parents.

On July 10, 1981, the District Court found that Steven had not met the burden of proof to justify modification of the decree, that legal custody of Jeremy should remain with the court pending further review, and that physical custody be returned to Khristyne. The District Court specifically found that both Steven and Khristyne were fit and proper parents, that the provisions allowing reasonable visitation should remain in effect, and that all costs and fees awarded by the court were to be paid equally by each party. The court also found that the matter should be called up for review on December 2, 1981, and that the Colorado custodial arrangement should be monitored in the meantime. The District Court therefore overruled the application for modification of the original decree except to maintain legal custody in the court pending review, and ordered that Jeremy be delivered to Khristyne on July 12, 1981. The matter was appealed by Steven and docketed in this court in due course.

On December 2, 1981, the District Court held a review hearing in accordance with the July order. A further report by the psychologist reflected that Jeremy had done reasonably well in Colorado with Khristyne and that, although academically a bit weak and a bit lower than average, he was getting along reasonably well in school. Jeremy has expressed a preference to be with his mother. Following the December hearing the District Court reserved rulings pending the outcome of this appeal, but indicated that if it were to make a ruling, it would reaffirm the rulings of the July 10, 1981, order.

This court has consistently held that a decree fixing custody of a minor child will not be modified unless there has been a change in circumstances indicating that the person having custody is unfit for that purpose or that the best interests of the child require such action. *Bokelman v. Bokelman,* 202 Neb. 17, 272 N.W.2d 916 (1979).

The issues of granting or changing custody of a minor child are considered by this court de novo on the record. In determining the question of who should have the care and custody of the minor children of the parties to an action for the dissolution of a marriage, the controlling consideration is the best interests and welfare of the children. *Hoback v. Hoback,* 201 Neb. 639, 271 N.W.2d 336 (1978). On the record in the case at bar there can be no question that there has been a substantial change of circumstances as to both of the parties since the date of the original decree granting custody. In some respects the changes have been for the better and in other respects the changes have been for the worse. Each of the parties has had custody of the minor child for extended periods of time over the years. The trial court found that both parents were fit to have custody. That finding is subject to considerable doubt. Neither parent can be said to be a satisfactory parent under many standards of meas-

urement. In such a case the controlling consideration is the best interests and welfare of the child.

As the psychologist noted in his initial report in May of 1981: "This is an unusually complicated case. It is almost impossible to sift through the chaotic backgrounds of both parents, and trying to predict future behavior of either can quickly degenerate into endless speculative meandering." We agree with the conclusion of the psychologist, the guardian ad litem, and the trial court that this is not a case in which the physical custody of Jeremy should be placed in a foster home or the Department of Public Welfare. Having reached that conclusion we must now determine which of the two parents can better provide for the best interests and welfare of Jeremy.

We believe the stability of Steven's employment and residential situation is very persuasive. He has been regularly employed by the railroad company since March 1978. During the approximately 2 years that Steven had the physical custody of Jeremy, which included Jeremy's first year in school, the evidence is undisputed that Jeremy's physical needs were well taken care of and that his school grades were satisfactory. The psychologist favors Khristyne's family situation, primarily because of the stability and personality of the man with whom Khristyne is now living. While that relationship has now lasted for approximately 2 years, Khristyne's past history demonstrates the frailty of any reliance upon her stable, permanent relationship with any one man. The psychologist's concern with the violence which permeates Khristyne's former relationships, particularly with respect to Jeremy, is a justifiable concern. Neither is there any real indication of a substantial change in that respect, and Khristyne apparently still habitually carries a gun.

We are convinced that the best interests of Jeremy will not be served by constant custody disputes and

a shifting of physical custody and control from one parent to the other. A review of the entire record persuades us that the District Court was correct in retaining legal custody of Jeremy in the court, but that the physical custody of Jeremy should be awarded to Steven with provisions for regular monitoring of the situation in such fashion as the District Court may deem appropriate. Reasonable rights of visitation should be granted to Khristyne on such conditions as the court may deem proper.

That part of the decree of the District Court of July 10, 1981, maintaining legal custody of Jeremy Paul Truax in the District Court is affirmed. That part of the decree returning physical custody of the minor child to the petitioner Khristyne is vacated. The District Court is directed to place physical custody in the respondent Steven, and to make such additional orders as may be appropriate in accordance with this opinion. The parties are to pay their own costs.

AFFIRMED IN PART, AND IN PART REVERSED
AND REMANDED WITH DIRECTIONS.

KRIVOSHA, C.J., and WHITE, J., concur in the result.