341 N.W.2d 307 (1983)
215 Neb. 640
James Austin MACE, Appellant,
v.
Jerri Lynne Hanson MACE, Appellee.
No. 82-559.
Supreme Court of Nebraska.
November 18, 1983.
*309 Richard F. Welling of Breeling, Welling, Place & Steier, Omaha, for appellant.
Rodney W. Smith of Peebles & Smith, Neligh, for appellee.
KRIVOSHA, C.J., BOSLAUGH, WHITE, HASTINGS, CAPORALE and SHANAHAN, JJ., and GRANT, District Judge.
BOSLAUGH, Justice.
This is an appeal in a proceeding for a writ of habeas corpus to enforce a Mississippi judgment changing child custody between the parties.
The plaintiff, James Austin Mace, and the defendant, Jerri Lynne Hanson Mace, were married on September 28, 1972, in Elk Point, South Dakota. Two children were born of the marriage: Michelle Lynne, born May 2, 1973, and Adriane Lee, born October 12, 1977. The parties were divorced on September 12, 1980, by a decree of the chancery court of Jones County, Mississippi, the site of the couple's marital home.
The decree awarded custody of Michelle and Adriane to Jerri, subject to the reasonable visitation rights of James. James was ordered to pay child support. The decree did not prohibit Jerri from relocating to another state with the children.
Several members of Jerri's family reside in the Omaha area. Jerri and the two children moved to Omaha, Nebraska, just a few days after the divorce decree was entered. James and his father helped Jerri pack, and the record shows no objection by James to this move. Jerri has resided in Omaha since that time, and Michelle has attended school in Omaha.
In December 1981 the children went to Mississippi to visit their father. Although the parties had agreed that James would return the children to Omaha, he told Jerri that she would have to come to Mississippi to get them. Shortly after her arrival at James' parents' house to get the children, James arrived with an officer, who served Jerri with a summons to appear in the Jones County Chancery Court in an action to modify the decree. She then returned to Omaha with the children.
At the modification hearing in Mississippi, Jerri appeared through counsel, who objected that the chancery court lacked jurisdiction over Jerri and the children. The *310 Mississippi court held that since Jerri had been served with process, it had jurisdiction to modify its original decree. Jerri presented no evidence. James and his mother testified regarding Jerri's fitness as a custodial parent. The court found a material change in circumstances and awarded custody of the two children to James. Judgment was entered on March 24, 1982. On April 9, 1982, Jerri filed a petition for a rehearing, which is still pending. In correspondence with the Douglas County District Court, the presiding judge in Jones County, Mississippi, stated: "No hearing has been requested by that attorney on that petition. Under our procedure, until the attorney requests a hearing and gives proper notice to opposing counsel, the matter will lie dormant."
On April 9, 1982, James filed a petition for a writ of habeas corpus in Douglas County, demanding that Jerri turn the children over to him pursuant to the March 24, 1982, Mississippi judgment modifying the decree of September 12, 1980. Jerri responded to the writ, requesting that the Nebraska court examine the jurisdiction of the Mississippi court in modifying the decree, and requesting that she be awarded custody.
On April 12, 1982, after an altercation with Jerri's brother and upon showing a copy of the Mississippi decree to school officials, James took Michelle from her school and returned to Mississippi. Adriane remained in Omaha with Jerri.
At the hearing in this case the trial court ordered James to return Michelle to Douglas County, and James complied. The court then heard evidence regarding the fitness of the parents, and interviewed the children. The court dismissed the petition for a writ of habeas corpus and awarded custody of the children to Jerri. James appeals.
Habeas corpus proceedings may be used to enforce a foreign judgment regarding child custody. See Slidell v. Valentine, 298 N.W.2d 599 (Iowa 1980). The Uniform Child Custody Jurisdiction Act, 9 U.L.A. 116-70 (1979) (UCCJA), is applicable in the present case.
James argues that the UCCJA, enacted in Nebraska and codified as Neb.Rev.Stat. §§ 43-1201 et seq. (Cum.Supp.1982), required the District Court to summarily enforce the March 24, 1982, Mississippi modification judgment and precluded the District Court from making a modification decree.
There is some doubt as to whether the 1982 Mississippi judgment modifying the 1980 decree was a final order such that we might be required to enforce under any theory. See 50 C.J.S. Judgments § 889(3) (1947). However, neither party has raised an issue regarding its finality, and the plaintiff could not be heard to assert its lack of finality, since he seeks to enforce the judgment. Furthermore, we conclude that the Mississippi court did not exercise jurisdiction substantially in conformity with the act, as required by § 43-1206, and the Mississippi judgment is not enforceable in Nebraska under the terms of our statute.
The general purposes of the UCCJA are set forth in § 43-1201. Of the nine purposes listed the most significant to the present case is set out in subdivision (c): "Assure that litigation concerning the custody of a child take place ordinarily in the state with which the child and his family have the closest connection and where significant evidence concerning his care, protection, training, and personal relationships is most readily available, and that courts of this state decline the exercise of jurisdiction when the child and his family have a closer connection with another state."
The UCCJA requires the enforcement of a decree of another state under certain conditions: "The courts of this state shall recognize and enforce an initial or modification decree of a court of another state which had assumed jurisdiction under statutory provisions substantially in accordance with sections 43-1201 to 43-1225 or which was made under factual circumstances meeting the jurisdictional standards of the act, so long as this decree has not been *311 modified in accordance with jurisdictional standards substantially similar to those of sections 43-1201 to 43-1225." § 43-1213.
The jurisdictional provisions of the UCCJA are set forth in § 43-1203: "(1) A court of this state which is competent to decide child custody matters has jurisdiction to make a child custody determination by initial or modification decree if:
"(a) This state (i) is the home state of the child at the time of commencement of the proceeding, or (ii) had been the child's home state within six months before commencement of the proceeding and the child is absent from this state because of his removal or retention by a person claiming his custody or for other reasons, and a parent or person acting as parent continues to live in this state;
"(b) It is in the best interest of the child that a court of this state assume jurisdiction because (i) the child and his parents, or the child and at least one contestant, have a significant connection with this state, and (ii) there is available in this state substantial evidence concerning the child's present or future care, protection, training, and personal relationships;
"(c) The child is physically present in this state and (i) the child has been abandoned or (ii) it is necessary in an emergency to protect the child because he has been subjected to or threatened with mistreatment or abuse or is otherwise neglected; or
"(d)(i) It appears that no other state would have jurisdiction under prerequisites substantially in accordance with subdivision (a), (b), or (c) of this section, or another state has declined to exercise jurisdiction on the ground that this state is the more appropriate forum to determine the custody of the child, and (ii) it is in the best interest of the child that this court assume jurisdiction.
"(2) Except under subdivisions (c) and (d) of subsection (1) of this section, physical presence in this state of the child, or of the child and one of the contestants, is not alone sufficient to confer jurisdiction on a court of this state to make a child custody determination.
"(3) Physical presence of the child, while desirable, is not a prerequisite for jurisdiction to determine his custody."
Section 43-1213 does not require automatic enforcement of a foreign decree or a foreign modification of a decree simply because it is shown to the court that it exists. Rather, the statute requires that the court in which enforcement is sought examine the jurisdictional foundation upon which the foreign court acted. See In re Marriage of Hopson, 110 Cal.App.3d 884, 168 Cal.Rptr. 345 (1980). If the foreign court has assumed jurisdiction under statutory provisions substantially in accordance with the UCCJA or under factual circumstances meeting the UCCJA jurisdictional standards, then the court must recognize and enforce the foreign decree.
Mississippi had not adopted the UCCJA at the time of the modification decree. However, this does not preclude the application of the UCCJA jurisdictional standards to the Mississippi decree. Bergstrom v. Bergstrom, 271 N.W.2d 546 (N.D. 1978). In this regard we consider the factual circumstances under which the Mississippi court assumed jurisdiction in light of the UCCJA standards as set forth in § 43-1203.
Primarily, the UCCJA is concerned with subject-matter jurisdiction and not personal jurisdiction. Submission of a person to the jurisdiction of the court does not alone confer jurisdiction under the act. § 43-1203(2). The jurisdictional standards of the act are designed to achieve both certainty and predictability in the enforcement of child custody decrees while assuring that a court which assumes jurisdiction acts in the child's best interests. See, Slidell v. Valentine, 298 N.W.2d 599 (Iowa 1980); Hafer v. Superior Court, County of San Diego, 126 Cal.App.3d 856, 179 Cal. Rptr. 132 (1981).
Section 43-1203(1)(a) provides that the court of the "home state" of the child has jurisdiction. Section 43-1202(5) defines *312 "home state" as follows: "Home state shall mean the state in which the child immediately preceding the time involved lived with his parents, a parent, or a person acting as parent, for at least six consecutive months, and in the case of a child less than six months old the state in which the child lived from birth with any of the persons mentioned. Periods of temporary absence of any of the named persons are counted as part of the six-month or other period."
The evidence in this case shows that Jerri and the children lived in Omaha for 18 months prior to the commencement of this action. Nebraska, not Mississippi, is therefore the home state of the children. Because the children had not lived in Mississippi within 6 months prior to the commencement of this action, § 43-1203(1)(a)(ii) does not apply.
Section 43-1203(1)(b) provides that a court may assume jurisdiction as in the best interests of the child because the child and one or both of his parents has a significant connection with the state and there is available in that state substantial evidence regarding the child's present or future care, protection, training, and personal relationships. The following statement in In re Marriage of Hopson, supra, is relevant: "In commenting on the application of subdivision (1)(b), the commissioners expressed that `perhaps more than any other provision of the Act requires that it be interpreted in the spirit of the legislature purposes expressed' in section 5150 (quoted below at footnote 14 on page 354 [of 168 Cal.Rptr.]). `The paragraph was phrased in general terms in order to be flexible enough to cover many fact situations too diverse to lend themselves to exact description. But its purpose is to limit jurisdiction rather than to proliferate it. The first clause of the paragraph is important: jurisdiction exists only if it is in the child's interest, not merely the interest or convenience of the feuding parties, to determine custody in a particular state. The interest of the child is served when the forum has optimum access to relevant evidence about the child and family. There must be maximum rather than minimum contact with the state' (9 U.Laws Ann.Commrs.' Note Foll. § 3, emphasis included)....
. . . .
"Analyzing the dilemma created by the application of section 5152, subdivision (1)(b) under the circumstances we note that... we are told that the best interest of the child is served if jurisdiction is exercised by the forum with which he has maximum contact and which there is substantial evidence concerning his relationship with others." 110 Cal.App.3d at 895-96, 168 Cal. Rptr. at 353-54.
James was a resident of Mississippi at the time the action to modify the decree of 1980 was commenced. Evidence regarding the father's ability to care for his children and regarding the father's present and extended families was available in Mississippi.
However, before we could conclude that this was sufficient under § 43-1203(1)(b) to warrant jurisdiction in conformity with the act so that we are required to enforce the Mississippi judgment, we must consider whether the Mississippi court acted in the best interests of the children when it assumed jurisdiction.
In Both v. Superior Ct., in & for Cty. of Mohave, 121 Ariz. 381, 384, 590 P.2d 920, 923 (1979), the court said: "Usually the best interest of the child is served by having a determination in the state where the parties both reside and where the facts concerning the custody of the child are more readily available to the court."
In Hafer v. Superior Court, County of San Diego, 126 Cal.App.3d 856, 866, 179 Cal.Rptr. 132, 138 (1981), the court said: "In re Marriage of Carney, 24 Cal.3d 725, 730-731, 157 Cal.Rptr. 383, 598 P.2d 36, strongly emphasizes children's needs for stability and continuity. So also does the Act. The home state concept is therefore of the utmost importance in the Act, requiring the courts, when possible, to choose that forum to adjudicate custody disputes. The children's home is the presumptively *313 correct forum. A showing of need to change custody does not alter the fact the modification process will be less harmful to the children if conducted near their present home."
Although Mississippi had some contacts with the children, it is Nebraska which has the maximum contact. The evidence concerning the children's schooling, their present care, their present relationships, and their extended family is more readily available in Douglas County. Moreover, Omaha, as the children's home state for the entire 18-month period since the divorce, is the "presumptively correct" forum. Hafer, supra. We also note that the evidence regarding Jerri's fitness as a mother, the crux of James' allegations that he should be the custodial parent, is more readily available in Douglas County.
The evidence shows no factual basis to support an assumption of jurisdiction by Mississippi under § 43-1203(1)(c) or (d). Its assumption of jurisdiction did not serve the best interests of the children. Nebraska has jurisdiction under both the "home state" test and the "best interests" test, and it is now the more appropriate forum for litigation of the child custody issue.
"The Act contemplates concurrent jurisdiction and contains three provisions to assist a court in determining which forum to choose." In re Marriage of Leonard, 122 Cal.App.3d 443, 468, 175 Cal.Rptr. 903, 917 (1981). The only such provision relevant in this appeal is § 43-1207(1), (2), and (3): "(1) A court which has jurisdiction under sections 43-1201 to 43-1225 to make an initial or modification decree may decline to exercise its jurisdiction any time before making a decree if it finds that it is an inconvenient forum to make a custody determination under the circumstances of the case and that a court of another state is a more appropriate forum.
"(2) A finding of inconvenient forum may be made upon the court's own motion or upon motion of a party or a guardian ad litem or other representative of the child.
"(3) In determining if it is an inconvenient forum, the court shall consider if it is in the interest of the child that another state assume jurisdiction. For this purpose it may take into account the following factors, among others:
"(a) If another state is or recently was the child's home state;
"(b) If another state has a closer connection with the child and his family or with the child and one or more of the contestants;
"(c) If substantial evidence concerning the child's present or future care, protection, training, and personal relationships is more readily available in another state;
"(d) If the parties have agreed on another forum which is no less appropriate; and
"(e) If the exercise of jurisdiction by a court of this state would contravene any of the purposes stated in section 43-1201." (Emphasis supplied.)
We believe that if the Mississippi court had analyzed its jurisdictional basis in conformity with the above-quoted section, it would have concluded that its assumption of jurisdiction would defeat the purposes of the act, i.e., that litigation should take place in the forum with maximum contact and that Nebraska is the "more appropriate forum."
We conclude that because Nebraska has jurisdiction under the act and is the more appropriate forum, it may modify the original divorce decree with regard to child custody. § 43-1214.
James assigns as error the denial of his request for pretrial discovery as provided by §§ 43-1218 through 43-1222. The record does not reflect any request for discovery, nor that such a request was denied by the court. Evidence which does not appear in the record cannot be considered on appeal by the Supreme Court. Weeks v. State Board of Education, 204 Neb. 659, 284 N.W.2d 843 (1979). The hearing took place over an 8-day period, some 2 weeks after James' petition was filed. It appears from the record that all *314 witnesses germane to his allegations regarding Jerri's fitness appeared and testified.
James' final assignment of error is that it was error to determine that it was in the best interests of the children to award custody to Jerri. The review of a determination of child custody is de novo on the record; however, weight is given to the fact that the trial court observed the witnesses and their manner of testifying and that the court accepted one version of the facts rather than another. Hicks v. Hicks, 214 Neb. 588, 334 N.W.2d 807 (1983); Elsasser v. Elsasser, 206 Neb. 128, 291 N.W.2d 260 (1980).
The controlling consideration in a child custody determination is the best interests and welfare of the children. Krueger v. Krueger, 211 Neb. 568, 319 N.W.2d 445 (1982). Among the factors to be considered in determining the best interests of the children are the moral fitness of the parents, respective environments offered by each parent, emotional relationships between the children and parents, and the age, sex, and health of the children. Sexual misconduct, while not determinative, may be considered. Koch v. Koch, 209 Neb. 896, 312 N.W.2d 294 (1981); Kringel v. Kringel, 207 Neb. 241, 298 N.W.2d 150 (1980); Hicks v. Hicks, supra. A child's statement of preference of custody may be considered. State ex rel. Speal v. Eggers, 181 Neb. 558, 149 N.W.2d 522 (1967). Other considerations are the effect on the children of continuing or disrupting an existing relationship, attitude and stability of each parent, and the capacity to furnish physical care, education, and needs of the children. Duff v. Duff, 203 Neb. 767, 280 N.W.2d 69 (1979).
In the present case the father's main concern was what effect Jerri's former boyfriend, who lived with Jerri and the children for several months in 1980, may have had on the children.
After hearing testimony in this case from the children, the boyfriend, and Jerri, the District Court concluded that the relationship which terminated in December 1980 had no detrimental effect upon the children. The record discloses that the live-in relationship was of but a brief duration, and has now ended. Although Jerri had planned to marry this man, she has since reconsidered those plans. This evidence alone did not establish that Jerri was an unfit parent.
The ages and sex of the children, a 6-year-old girl and a 10-year-old girl, and the long relationship they have had with their mother must be considered. The mother is able to spend more time with the children than is their father, a medical student with several years of residency training ahead of him. The trial court interviewed the children, both of whom indicated a preference to be with their mother and indicated a reluctance to leave their established friendships in Omaha. In granting custody to the mother, Jerri, the trial court said: "[I]n this case it is important to note that the upbringing of the children has been for the most part the responsibility of the [mother]. In view of the circumstances the [mother] has done a commendable job in raising these children. These children are evidence enough to support the premise that the respondent has and will give the children both the quantity and quality of time necessary for their well-being."
As we view the record, custody was properly awarded to the mother. We find no basis upon which to disturb the order of the trial court in that regard.
The judgment of the District Court is affirmed.
AFFIRMED.
KRIVOSHA, Chief Justice, dissenting.
I regret that I must dissent in this case. I believe that the majority has misread and misapplied the provisions of the Nebraska Child Custody Jurisdiction Act, Neb.Rev. Stat. §§ 43-1201 et seq. (Cum.Supp.1982), and as a result has effectively repealed the act.
As noted by the majority, the act was promulgated by the National Conference of *315 Commissioners on Uniform State Laws. An examination of its notes to the act are extremely helpful in understanding the intent and purpose of the act. (See Uniform Child Custody Jurisdiction Act, Commissioners' Note, 9 U.L.A. 151 (1979).)
Contrary to the suggestion made by the majority, the "most significant" purpose of the act as applied to the present case is not § 43-1201(1)(c) but, rather, a number of other items, including § 43-1201(1)(b), (f), and (g), which provide as follows: "(b) Promote cooperation with the courts of other states to the end that a custody decree is rendered in that state which can best decide the case in the interest of the child ... (f) Avoid relitigation of custody decisions of other states in this state when feasible; (g) Facilitate the enforcement of custody decrees of other states." In my view we have chosen to ignore both the direct language of the act as well as the obvious purpose. See § 43-1201.
The Commissioners' Prefatory Note further explains the purpose of the act, noting at 111, 113-14: "There is growing public concern over the fact that thousands of children are shifted from state to state and from one family to another every year while their parents or other persons battle over their custody in the courts of several states. . . .
. . . .
"... Generally speaking, there has been a tendency to over-emphasize the need for fluidity and modifiability of custody decrees at the expense of the equal (if not greater) need, from the standpoint of the child, for stability of custody decisions once made....
"Under this state of the law the courts of the various states have acted in isolation and at times in competition with each other; often with disastrous consequences. A court of one state may have awarded custody to the mother while another state decreed simultaneously that the child must go to the father. [Citations omitted.] In situations like this the litigants do not know which court to obey. They may face punishment for contempt of court and perhaps criminal charges for child stealing in one state when complying with the decree of the other. Also, a custody decree made in one state one year is often overturned in another jurisdiction the next year or some years later and the child is handed over to another family, to be repeated as long as the feud continues. [Citations omitted.]
. . . .
"To remedy this intolerable state of affairs where self-help and the rule of `seize-and-run' prevail rather than the orderly processes of the law, uniform legislation has been urged in recent years to bring about a fair measure of interstate stability in custody awards...."
"The Act is designed to bring some semblance of order into the existing chaos.... It provides for the recognition and enforcement of out-of-state custody decrees in many instances. See Sections 13 and 15. Jurisdiction to modify decrees of other states is limited by giving a jurisdictional preference to the prior court under certain conditions. See Section 14."
Obviously, the real purpose of the act was to avoid the very conflict which the majority opinion in this case has now created. Rather than limiting jurisdiction and reducing chaos, we have increased jurisdiction and enlarged chaos.
As an example, the majority opinion suggests that there is serious doubt as to whether the 1982 Mississippi judgment modifying the 1980 decree was a final order, such that we might be bound to enforce that decree under the act. With that conclusion I agree. I conclude, however, that because the Mississippi judgment was not a final order but, rather, a pending order, under the provisions of § 43-1206 we are required to decline jurisdiction in this case until a final order has been entered. See § 43-1206(1). That is all we should do in this case. By filing a petition for rehearing in Mississippi, Mrs. Mace has chosen to submit her grievance to the Mississippi court. She should not be permitted, on the one hand, to seek relief from the Mississippi court while, on the other *316 hand, contending that the court is without jurisdiction, and its orders ignored.
There is no question that there is presently pending, and was at the time that the District Court for Douglas County, Nebraska, exercised its jurisdiction, a petition proceeding concerning the custody of a child in another state, thereby invoking the provisions of § 43-1206. The Commissioners' Note to § 6 specifically provides that this conflict is to be avoided. It reads at 134-35: "Because of the havoc wreaked by simultaneous and competitive jurisdiction which has been described in the Prefatory Note, this section seeks to avoid jurisdictional conflict with all feasible means, including novel methods. Courts are expected to take an active part under this section in seeking out information about custody proceedings concerning the same child pending in other states. In a proper case jurisdiction is yielded to the other state either under this section or under section 7. Both sections must be read together.
. . . .
"While jurisdiction need not be yielded under subsection (a) if the other court would not have jurisdiction under the criteria of this Act, the policy against simultaneous custody proceedings is so strong that it might in a particular situation be appropriate to leave the case to the other court even under such circumstances....
"Once a custody decree has been rendered in one state, jurisdiction is determined by sections 8 and 14."
While § 8 is not applicable in this case, § 14 clearly covers the situation. The Commissioners' Note makes that fact abundantly clear. It reads in part at 154: "Courts which render a custody decree normally retain continuing jurisdiction to modify the decree under local law. Courts in other states have in the past often assumed jurisdiction to modify the out-of-state decree themselves without regard to the preexisting jurisdiction of the other state. [Citation omitted.] In order to achieve greater stability of custody arrangements and avoid forum shopping, subsection (a) declares that other states will defer to the continuing jurisdiction of the court of another state as long as that state has jurisdiction under the standards of this Act. In other words, all petitions for modification are to be addressed to the prior state if that state has sufficient contact with the case to satisfy section 3. The fact that the court had previously considered the case may be one factor favoring its continued jurisdiction. If, however, all the persons involved have moved away or the contact with the state has otherwise become slight, modification jurisdiction would shift elsewhere. [Citation omitted.]"
Moreover, the example given in the Commissioners' Note is relevant to this case. The note reads at 154: "For example, if custody was awarded to the father in state 1 where he continued to live with the children for two years and thereafter his wife kept the children in state 2 for 6½ months (3½ months beyond her visitation privileges) with or without permission of the husband, state 1 has preferred jurisdiction to modify the decree despite the fact that state 2 has in the meantime become the `home state' of the child. If, however, the father also moved away from state 1, that state loses modification jurisdiction interstate, whether or not its jurisdiction continues under local law.... Also, if the father in the same case continued to live in state 1, but let his wife keep the children for several years without asserting his custody rights and without visits of the children in state 1, modification jurisdiction of state 1 would cease."
In the instant case, while the mother was awarded custody of the children, she was not authorized to remove the children from the jurisdiction of the Mississippi court. Even if the father consented to the move, a fact which is apparently disputed, the Mississippi court could not be divested of its continuing interest in or jurisdiction over the children. Furthermore, the father did not abandon the children nor fail to exercise his visitation rights. The children continued to return to Mississippi to visit with the father.
*317 In the instant case the evidence discloses that while Nebraska has developed contacts with the children, Mississippi has not lost the contacts. It is in Mississippi where the father lives and where the children regularly visit; it is in Mississippi where the continuing child support judgment rests and from where the children receive at least a portion of their support; it is in Mississippi where the child support order must be enforced if the father fails to pay; and it is in Mississippi where Mrs. Mace has sought the court to reconsider its actions and grant her relief. To therefore suggest that Mississippi no longer has any significant interest in this matter is to ignore the facts.
The majority suggests that neither § 43-1206 nor § 43-1214 applies because Mississippi had not, at the time this action was commenced, adopted the Uniform Child Custody Jurisdiction Act. But that is not the sole criterion under the act. It must either assume jurisdiction under statutory provisions substantially in accordance with the act or enter its decree under factual circumstances meeting the jurisdictional standards substantially similar to the act. As the Commissioners' Note indicates, this does not require that the initial jurisdiction remain the "home state," but only that it retain sufficient interest in the case.
The Commissioners' Note at 151 to § 13 of the act emphasizes this point.
"This section and sections 14 and 15 are the key provisions which guarantee a great measure of security and stability of environment to the `interstate child' by discouraging relitigations in other states. [Citations omitted.]
"Although the full faith and credit clause may perhaps not require the recognition of out-of-state custody decrees, the states are free to recognize and enforce them. See Restatement of the Law Second, Conflict of Laws, Proposed Official Draft, section 109 (1967), and see the Prefatory Note, supra. This section declares as a matter of state law, that custody decrees of sister states will be recognized and enforced. Recognition and enforcement is mandatory if the state in which the prior decree was rendered 1) has adopted this Act, 2) has statutory jurisdictional requirements substantially like this Act, or 3) would have had jurisdiction under the facts of the case if this Act had been the law in that state. [Citation omitted.]
"`Jurisdiction' or `jurisdictional standards' under this section refers to the requirements of section 3 in the case of initial decrees and to the requirements of sections 3 and 14 in the case of modification decrees."
The "home state" concept of § 43-1203 is relevant only when the initial state has lost jurisdiction by reason of both parties leaving the original state or by reason of some deliberate action taken by one of the parties which relieves the original state of its jurisdiction.
Our decision in this case has brought about exactly all of the things which the adoption of the act sought to eliminate. We now have two decrees in two different jurisdictions involving the custody of the children, neither of which apparently can be enforced outside the jurisdiction in which the decree was entered. Moreover, because the Mississippi court has granted the father custody, it has terminated child support. Nebraska, under this act, cannot impose child support, and now the children must be without child support. Furthermore, should the wife ever go into Mississippi for the purpose of attempting to seek a child support order, she will likely be held in contempt of court and in violation of an existing court decree. How we suggest that all of this is in the best interests of the children is difficult to imagine.
One further aspect of the majority opinion requires comment. The majority states that, before we are required to recognize the Mississippi decree in any event, we must consider whether the Mississippi court acted in the best interests of the child when it assumed jurisdiction. The majority then reasons that Mississippi did not act in the child's best interests when it granted custody to the father, a married medical student with a stable home, and took custody away from the mother, whom the evidence discloses had permitted a male to live *318 with her and the children during a part of 1980. How we reach that conclusion in view of our recent decisions in Hinz v. Hinz, 215 Neb. 335, 338 N.W.2d 442 (1983); Hicks v. Hicks, 214 Neb. 588, 334 N.W.2d 807 (1983); and Krueger v. Krueger, 211 Neb. 568, 319 N.W.2d 445 (1982), is difficult to follow.
It appears to me that what we have attempted to do in this case is to find justification for placing custody of the children with the mother, notwithstanding the order of a court having jurisdiction over the parties. In order to accomplish that end we have had, therefore, to ignore our own case law and the statutes involved. Apparently, we believe we can determine "best interest" better than the Mississippi court can. Would we wish other jurisdictions to so lightly consider our decrees? I fear that we have created untold difficulty by our action here, and it will not take very long for us to wish we had not reached the conclusion we have reached. The trial court should have required the parties to return to Mississippi where the entire matter could be resolved. I would have so held.
CAPORALE, J., joins in this dissent.