STATE, EX REL. JAMES H. EDMISTEN ET AL., APPELLEES, V. JESSE HIGHBERGER, APPELLANT.

FILED MARCH 1, 1919. No. 20326.

Habeas Corpus: CUSTODY OF MINOR. In habeas corpus proceedings to determine the right to the possession of a child, as between the father and the grandparents, where the evidence is conflicting as to the fitness of the respective claimants, and as to the agreement whereby the possession of the child was formerly committed to the grandparents, the controlling consideration is what is for the best interests of the child.

APPEAL from the district court for Lincoln county: HANSON M. GRIMES, JUDGE. *Affirmed.*

*Hoagland & Hoagland* and *George N. Gibbs,* for appellant.

*Wilcox & Halligan* and *W. T. Thompson, contra.*

ALDRICH, J.

The respondent in a habeas corpus proceeding seeks to reverse a judgment in the district court for Lincoln county awarding the custody of respondent's minor child to James H. and Belle Edmisten, the relators, until further order of the court. From this finding the respondent appeals.

Corinne E. Highberger, upon the death of her mother, when she was 18 months of age, was taken possession of by family arrangement and turned over to relators, her grandparents, where she was kept and nurtured and tenderly looked after from that time until a short time before the action was begun, when the father took her into his possession. The father, Jesse Highberger, is a successful farmer and well-to-do, has a good home and can provide well for his child. Some few years ago the respondent married, and in due course of time had another child by the second wife, and, feeling that he is now in a position to afford the care and comforts of a good home for the child in question, he resists these proceedings in habeas corpus to obtain possession of her. The relators are prominent people living in comfortable circumstances at North Platte. The child, Corinne E. Highberger, has a lovely home, and the privileges of church, Sunday school, and the public school. During the first years of her life, this child was delicate and frail, and at times her life was despaired of. During all of this time the grandparents lavished all the love, affection and tender care that they could have done upon the dead daughter had she been living, and the grief that the death of the child's mother caused these grand-

parents was assuaged by the presence of the little granddaughter, and all the natural affection which the grandparents had for the dead daughter was given this child. She was tenderly nursed through sickness and given the best medical attention and all the tender nursing that a loving mother would have bestowed. This child is now budding into young girlhood; has a pleasant home, the advantages of church, Sunday school and the public school, and associations that can but be conducive to happiness, good cheer, and right development. The child is happy in these surroundings, and to break these relations would not only be dangerous, but cruel in the extreme. In a situation where prior arrangement for possession of a child are in dispute, and the terms and conditions strenuously contended between the foster parents and the real parent, it is not only dangerous but inhuman to break these ties between the child and the foster parents.

In a situation like this, there is only one sensible thing to do, to wit, consider what is the best interests of the child. Are her surroundings at present happy and conducive to the right development of character, mind and body? Should we, under the circumstances, change these happy relations? Should we hazard the happiness and welfare of the child to satisfy the abstract right of the father? Has the father shown such love and effection for this child as to make his possession imperative? The record discloses that the father (a busy man), accumulating property and waging a battle for position, had but little time, if any, to devote to this child. On the contrary, he has turned her full possession and control and the entire responsibility for her bringing up into the hands of the grandparents, and so well did they perform their task that he had but little occasion to give himself any worry or assume any responsibility in behalf of the child. Now, after the grandparents have learned to love this child as they did the dead daughter, they are called upon to give her up; but we are uncertain as to the

precise terms and conditions of the agreement originally entered into concerning the possession of this child: We are loath to disturb the happy relations as they exist at the present time, and under the facts, as we understand them from the record, will only determine what is for the best interests of the child. We shall follow the doctrine or rule laid down in *In re Burdick,* 91 Neb. 639, and *State v. Nebraska Children's Home Society,* 94 Neb. 255. This is the only safe rule under the circumstances. We feel that we should adhere to it, as the child has not been permanently turned over to the grandparents, but only in possession subject to the further order of the trial court. Therefore, we feel that the, judgment of the trial court was right and must be

