IN RE GUARDIANSHIP OF ROBERT B. HERTEN ET AL. AGNES STEWART, GUARDIAN, APPELLANT, V. FRANK HERTEN, GUARDIAN, APPELLEE.

FILED MAY 15, 1934. No. 28925.

*Robert G. Fuhrman* and *Anson H. Bigelow,* for appellant.

*Alfred D. Raun, contra.*

Heard before GOSS, C. J., ROSE, GOOD, EBERLY, DAY and PAINE, JJ., and REDICK, District Judge.

PAINE, J.

This is a controversy between a brother and sister, who are joint testamentary guardians of two minor children. They each have the custody of one minor, and the sister brings action to get the custody of both minors.

Charles F. Herten, a stock-feeder and farmer of Walthill, died January 29, 1931, following an operation for stomach trouble. His wife died two days prior thereto from an infection communicated to her from her infant daughter, Marilyn, who had been very sick for two weeks. The objects of this litigation are the orphans left, to wit, a son, Robert, born in 1917, and this infant daughter, Marilyn. On the night before his death Charles F. Herten made a will, giving almost his entire estate, which was later appraised at $94,979 (now worth perhaps $70,-000), to these two children, and appointing his sister, Agnes Stewart, the plaintiff herein, and his brother Frank, the defendant herein, as joint guardians.

Mrs. Agnes Stewart lives with her husband in a rented home at 2016 North Fiftieth street, Omaha, five or six blocks from the Benson high school, and in a high-class residence district. They have no children of their own, but Mrs. Stewart's sister, Miss Tina Herten, about 24

years of age, makes her home with them. Robert Herten, the older of the two children of Charles F. Herten, has lived with them since March 22, 1931. Mr. Stewart is manager of a laundry supply house, and earns about $350 a month, being a stockholder in the company.

Frank Herten lives at Walthill, Nebraska, in the former Charles F. Herten residence, at a rental to the estate fixed by the court. He had worked for his deceased brother, Charles, for about 18 years. After his brother's death he moved from the house he had occupied, which was given to him in the will. His household comprises himself, his wife, Benita, a former school-teacher and now a member of the school board in Walthill, and little Marilyn, who has been with them since the death of her parents. They have no children of their own. Frank Herten has been operating the Charles F. Herten farm at Rosalie, the Herten 80 acres at the edge of Walthill, and an adjoining 80 acres rented from Chester Boughn, coexecutor of the Charles F. Herten estate, and he also feeds hogs in the Charles F. Herten feed yards.

When Charles F. Herten died, January 29, 1931, leaving two children and a considerable estate, his death started a series of lawsuits, which have disturbed the peace of mind of the children and relatives, and estranged a brother and sister, who were appointed joint guardians.

The first appearance in this court of litigation affecting these two minors is the case of *Stewart v. Herten*, 125 Neb. 210, where a decision was entered upon an action brought by Agnes Stewart in the district court to have a trust company appointed to handle the funds of the wards, and it was held that exclusive original jurisdiction in such matters is conferred on the county court, and that the district court was not authorized to entertain original jurisdiction in such matter, and that the district court could not appoint a trustee who would take over the property of these two minors, and manage and invest and control it, for that power was granted by the county court to the joint testamentary guardians.

The transcript shows that on February 23, 1931, the county judge issued letters of guardianship, naming the plaintiff and defendant in this case as joint testamentary guardians, directing them to take the custody of the two minor children, and the care and management of their estate. Upon March 27, 1931, the plaintiff herein filed her petition, asking that she be given the custody of both children. On April 17 Frank Herten, the defendant herein, filed his answer and cross-petition, denying many of the allegations in the petition, and asking that he be given the custody of both minors, and upon April 21 Anson H. Bigelow, attorney for the plaintiff, filed a petition of intervention for seven other relatives, joining in the request of the plaintiff herein for the custody of both of them.

Upon June 13, 1931, the county judge entered his order, finding that, at the time of the death of the father, both minor children were in the home and in the custody of the defendant herein, but that soon thereafter the minor son, Robert, began spending a part of his time with his maternal grandparents, and about March 1, 1931, abandoned the home of this defendant, in which his sister was then living, and where she has continued to live, and lived with his grandparents until March 22, 1931, when he voluntarily went to Omaha to live with the plaintiff herein; and decided that the said Robert might remain with the plaintiff herein at her home in Omaha. The court further found that Marilyn was not of school age, and that the defendant and his wife are suitable and proper persons to have the care, custody, control, and education of Marilyn, and that she shall be permitted to visit her maternal grandparents, also living in Walthill, a portion of three days in each week between meal-times.

The concluding paragraph of the county judge's order as to custody reads as follows: "It is further ordered that as this is not a controversy between the joint guardians and outside contestants but is a personal controversy between one joint guardian and the other as to custody

no costs or expenses arising out of the question of custody are taxable against the estates of said minors."

On July 10, 1931, the plaintiff herein having filed her notice of intention to appeal, it was provided that no appeal bond be required of her. On August 20, 1931, the plaintiff herein filed her petition on appeal in the district court, setting up that on January 29, 1931, as her brother was facing a serious operation, he made his last will and testament, in which the plaintiff and defendant, being brother and sister, were appointed joint guardians of the children, and that the dying man asked the plaintiff herein if she would be willing to assume the care of both of his children, and she now prays for the custody of both of the minor children. That on September 12, 1931, the defendant and cross-petitioner filed his answer, stating that he and his wife have had the complete care and custody of the minor Marilyn from the day of the death of her mother; that Marilyn is now only slightly over two years of age, and has been carefully taken care of by the defendant and his wife, who are living in the valuable, modern home belonging to the two minors, and that the minor Robert could also be taken care of in the same home at less expense than in Omaha. That Charles F. Herten before his death expressed the wish that his brother, Frank Herten, live in said home; that it is within three blocks of an up-to-date grade and high school. That the defendant and his wife are good, frugal, Christian people, and are capable and competent to have the care and custody of the minors, and asks that the petition of Agnes Stewart, his sister, be denied, and that he be given the custody of the two minors; and again a petition of intervention is filed, signed by Anson H. Bigelow, attorney for the plaintiff, for seven other relatives joining in the request of the plaintiff. But on December 11, 1931, five of the seven interveners asked to withdraw their appearance as interveners, and asked that their petition be dismissed, which was granted by the district judge.

This case was tried to Honorable Louis Lightner, district judge, and upon April 4, 1933, he filed his written findings and decree.

Several parties were in the hospital and heard the father speak of the two children. Agnes Stewart, the plaintiff herein, testifies: "He said, 'Agnes, will you take the children?' I said: 'Yes.' And he said: 'How will Phil feel about it?' And I said: 'Charley, Phil will feel the same way as I do; do you want me to ask him; would you feel better?' And he said: 'Yes.' So I called Phil in and Phil came and he asked Phil. * * * Phil said he would see that his wishes were fulfilled."

Chester Boughn, a druggist and the closest friend of Charles F. Herten, testified: "In my own language— Charley looked up at Agnes. He says: 'Agnes, just which one of my children do you want?' She says: 'Both of them.' He says, 'No; not both of them,' or words to that effect, and he says: 'What will Phil say about this?' 'Well,' she says, 'we will just send and get him.' So she went and got him, or somebody else. They brought him in, and Charley says to him, Charley or Agnes, I don't know which, says: 'We were just talking about the children.' I think she was the one that was talking there of the children. And she says: 'Charley wants to know how you would feel about having one of the children.' And Phil says: 'That is all right, Charley; whatever you say is perfectly all right,' or words to that effect; 'whatever you say is perfectly all right with me.'"

Dr. Alva Rousey was also in the room at the hospital at the time, and testified that, "when Phil was called into the room, * * * he asked Phil if it would be all right with him if he and Agnes, or rather if Agnes would take one of the children, in case he died. * * * He said anything that Charley wished would be all right with him, whatever he wanted to do. Q. And did Charley say anything to Frank at that time? A. Well, if I remember correctly, he just turned to Frank and asked him if it was all right, and Frank nodded it was."

While the evidence is sharply in conflict as to the exact words of the father, and while Agnes Stewart insists that he gave both of the children to her, even if this was not disputed by other witnesses, we do not believe that the expressed wish of a dying father would be final. If he could be here today, under the many changed conditions, he might have entirely different wishes. The governing rule, that has ever been adhered to by courts from the earliest times, is, what is now for the best interests of these two children?

"That a deceased parent of minor children expressed a wish as to the appointment of a guardian, or that a guardian is designated in a will, will not oust the jurisdiction of the court to determine who shall be the guardian." *In re Waite,* 180 N. W. 159 (190 Ia. 182).

"One with whom the child has had a home, where it has been properly treated and cared for, should be preferred over one whose appointment would necessitate its removal to a new home. So the separation of children of tender years from one another, or from those to whom they have become attached, should be avoided unless their true interests peremptorily require it." Woerner, American Law of Guardianship, 101, sec. 32.

"The rule of the court in choosing guardians seems to be to fix upon those who upon the whole appear best suited for, and will act most for the advantage of the ward. The court will consider nearness of relationship, and will select the nearest relations if there be no personal objection, *e. g.,* the aunt of the mother, the maternal uncle, the grandfather, the maternal grandmother, the uncle and aunt. The court will pay much regard to the wishes of the father, and will appoint as guardians those whom he has professed to appoint, though informally, *e. g.,* by a will not duly executed, * * * but the wishes of the father are not binding, and will not be acted on, if it be shown to be disadvantageous to the infant." Simpson, Law of Infants (4th ed.) 168.

The welfare of the child is the primary consideration

to which all other questions must yield, and the court must consider, not only the spiritual and temporal welfare, but the minor's further training, education, morals, and the ability of the proposed guardian to best take care of the child. *In re Butcher's Estate*, 266 Pa. St. 479.

"In such a controversy for the custody of the child the order of the court should be made with a single reference to the best interests of such child." *Sturtevant v. State*, 15 Neb. 459.

"In a situation like this, there is only one sensible thing to do, to wit, consider what is the best interests of the child. Are her surroundings at present happy and conducive to the right development of character, mind and body? Should we, under the circumstances, change these happy relations? * * * We are loath to disturb the happy relations as they exist at the present time, and under the facts, as we understand them from the record, will only determine what is for the best interests of the child." *State v. Highberger*, 103 Neb. 258.

The boy Robert insists that he wants his sister with him in Omaha, but his conduct and actions, when he could have been with her in Walthill, do not entirely support his expressed desires on the witness-stand.

The little girl Marilyn has been sickly, and has been most tenderly nursed by her Uncle Frank and his good wife, Benita. She has suffered from kidney trouble, and they have watched over her diet and nursed her back to health with such loving devotion that they have earned the appellations by which she calls them, of "Papa" and "Mamma." They have now had her in their home longer than she was in the home of her own parents. To forcibly remove her from this home might be serious to her health. It is a fine, religious home, with all the surroundings that a little girl should have, and the district judge was right in leaving her there.

The plaintiff herein has Robert with her. He plainly desires to live in Omaha, with its city attractions and educational advantages; only time will tell whether he

will use these advantages wisely. But the district judge left Robert where he found him, and as he had the advantage of this court in seeing the witnesses face to face, and hearing the testimony from their lips, we are inclined to concur in his judgment. This court is adverse to this continual litigation in regard to these two children and their property, and suggests that the guardians husband these diminishing resources, and use them solely for the benefit of the children.

Each guardian is separately answerable for the steps taken in this matter. Possibly the plaintiff feels that this litigation, instituted by her to get for herself the exclusive custody of both minors, is in the nature of a service which is necessary or beneficial to these wards. This contention does not appeal to us. Litigation that is of benefit to the wards is often brought under specific authority from the county court, and it does not appear in the record that the county court has authorized or approved this litigation, and it appears to this court to be a simple contest between two joint guardians for personal supremacy, and it is the hope of the court that, for the effect upon the wards, such efforts will be discontinued. *In re Estate of Aubrey,* 128 Okla. 79; *In re Talomase's Estate,* 98 Okla. 212.

Finding no error in the record, the judgment of the district court is hereby

AFFIRMED.

DAY, J., dissents.