Nebraska Supreme Court Online Library
www.nebraska.gov/apps-courts-epub/
05/31/2016 09:06 AM CDT

LACEY M. KENNER, APPELLANT, V.
RYAN JAMES BATTERSHAW, APPELLEE.
___ N.W.2d ___

Filed May 31, 2016.    No. A-15-776.

1. **Child Custody: Appeal and Error.** Child custody determinations are matters initially entrusted to the discretion of the trial court, and although reviewed de novo on the record, the trial court's determination will normally be affirmed absent an abuse of discretion.

2. **Child Custody.** Ordinarily, custody of a minor child will not be modified unless there has been a material change in circumstances showing that the custodial parent is unfit or that the best interests of the child require such action.

3. **Modification of Decree: Child Custody: Proof.** Before custody of a minor child may be modified based upon a material change in circumstances, it must be shown that the modification is in the best interests of the child.

4. **Child Custody.** Courts determining custody and parenting arrangements must consider (1) the relationship of the minor child to each parent prior to the commencement of the action or any subsequent hearing; (2) the desires and wishes of the minor child, if of an age of comprehension but regardless of chronological age, when such desires and wishes are based on sound reasoning; (3) the general health, welfare, and social behavior of the minor child; (4) credible evidence of abuse inflicted on any family or household member; and (5) credible evidence of child abuse or neglect or domestic intimate partner abuse.

5. ____. In addition to statutory "best interests" factors, a court making a child custody determination may consider matters such as the moral fitness of the child's parents, including the parents' sexual conduct; respective environments offered by each parent; the emotional relationship between child and parents; the age, sex, and health of the child and parents; the effect on the child as the result of continuing or disrupting an existing relationship; the attitude and stability of each parent's

character; and the parental capacity to provide physical care and satisfy the educational needs of the child.

6. ____. The desires and wishes of the minor child are not determinative of custody but are just a factor to be considered by the trial court, when the child is of an age of comprehension and bases those desires on sound reasoning.

Appeal from the District Court for Cherry County: Mark D. Kozisek, Judge. Affirmed.

Loralea L. Frank and Bergan E. Schumacher, of Bruner Frank, L.L.C., for appellant.

Michael S. Borders, of Borders Law Office, for appellee.

Moore, Chief Judge, and Inbody and Riedmann, Judges.

Riedmann, Judge.

## INTRODUCTION

Lacey M. Kenner appeals from an order of the district court for Cherry County modifying a paternity decree and awarding Ryan James Battershaw custody of the parties' minor child. After a de novo review of the record, we find that the trial court did not abuse its discretion, and accordingly, we affirm its modification order.

## BACKGROUND

Kenner and Battershaw have one son, Brayden Battershaw, who is the subject of the custody modification order before us. He was born in December 2006. Although Kenner and Battershaw never married, the three of them lived together for approximately 1½ years after Brayden was born. A decree of paternity was entered in 2010, and a stipulated agreement and modified parenting plan was entered in 2012. The parties have followed the 2012 parenting plan since it was entered; Brayden lives with Kenner a majority of the time, but Battershaw exercises significant parenting time for 1 full week each month and every other weekend during the school year. In the summer, the parties each exercise 6 weeks of parenting time.

At the time of trial, Kenner and Battershaw had each married other people, and Brayden has a warm, bonded relationship with both parents and both stepparents. Kenner also has two younger children with her husband. With Kenner and her husband, Brayden enjoys riding horses, "playing with Legos," going to church, swimming, fencing, haying, playing baseball, and entering rodeos. With Battershaw and his wife, Brayden enjoys playing board games and video games, fishing, hunting, swimming, playing basketball, spending time outdoors, going on road trips, and building cars. Battershaw has also recently coached him in summer soccer and baseball. Brayden was described during testimony as a happy child who makes friends easily and is socially involved. He also has excellent reports from school.

Kenner and Battershaw each have routines when parenting their son. Kenner is a stay-at-home mother and is available to care for him and his half siblings after school and in the summers. Battershaw and his wife both work full time. Battershaw works at a tire store, and his wife works at a law office. After school or during the day in the summertime when Battershaw is working, Brayden can go to the store with his father, go to his stepmother's office, read books in the library across the street from the office, or spend time with other family in Valentine, Nebraska, where Battershaw lives.

At the time the current parenting schedule was agreed to and entered, Battershaw lived in Valentine and Kenner lived on a ranch south of Wood Lake, Nebraska, which is near Valentine. Beginning in August 2014, Kenner's husband had disagreements with his father about the operations of the family ranch and ultimately lost his job working there. Both parties and their spouses searched for a new source of employment for Kenner's husband in the Valentine area; however, they were unable to find employment in that area that met the family's income, housing, and livestock housing needs. Kenner's husband eventually obtained employment in Emmett, Nebraska, which is approximately a 1½-hour drive from the family's

former home. Kenner's husband moved to and began employment in Emmett in January 2015.

Because of the distance of the Kenners' move, Kenner filed a complaint to modify the parties' paternity decree and custody arrangement, seeking full physical and legal custody of Brayden and asking to remove Battershaw's full week each month from the parties' parenting time schedule. Battershaw answered and filed a countercomplaint for modification also seeking custody of Brayden. While awaiting trial on her motion to modify, Kenner rented a home in Wood Lake so that Brayden could finish the school year there and continue the parties' current parenting plan. The family spent weekends in Emmett during the school year. At the end of the school year, Kenner moved to Emmett with her husband, Brayden, and her other children.

Both Kenner and Battershaw testified at trial that they are able to provide for their son's needs in their homes. If Brayden were to live with Battershaw, he would attend school in Valentine. Although Battershaw could continue to provide transportation for him to school in Wood Lake, that school has only four students enrolled, and the Battershaws own a home across the street from the elementary school in Valentine. If Brayden lived with the Kenners, he would live near the ranch outside Emmett and attend school in Atkinson, Nebraska.

During the trial, the court also conducted an in camera interview with Brayden and asked, among other things, whether he had a preference as to custody. We have considered the contents of this sealed interview in our de novo review of the record.

At the close of evidence, the district court took the matter under advisement, noting the difficulty of having to award custody to one parent or the other given what a good job the parents had done raising their son under their prior coparenting plan. In a written order modifying the decree, the district court awarded custody to Battershaw, and Kenner appeals.

## ASSIGNMENT OF ERROR

Kenner assigns on appeal that the district court abused its discretion when it granted Battershaw custody of Brayden.

## STANDARD OF REVIEW

[1] Child custody determinations are matters initially entrusted to the discretion of the trial court, and although reviewed de novo on the record, the trial court's determination will normally be affirmed absent an abuse of discretion. *Schrag v. Spear*, 290 Neb. 98, 858 N.W.2d 865 (2015). An abuse of discretion occurs when a trial court bases its decision upon reasons that are untenable or unreasonable or if its action is clearly against justice or conscience, reason, and evidence. *Id.* A judicial abuse of discretion requires that the reasons or rulings of the trial court be clearly untenable insofar as they unfairly deprive a litigant of a substantial right and a just result. *Id.*

## ANALYSIS

*Change of Circumstances.*

[2] Ordinarily, custody of a minor child will not be modified unless there has been a material change in circumstances showing that the custodial parent is unfit or that the best interests of the child require such action. *Schrag v. Spear, supra*. A material change in circumstances means the occurrence of something which, had it been known to the dissolution court at the time of the initial decree, would have persuaded the court to decree differently. *Id.*

While even an out-of-state move does not automatically constitute a change of circumstances, a significant move may be a change of circumstances warranting modification depending upon other evidence. See *id.* In this case, the parties' agreed parenting plan involved Brayden spending every other weekend and 1 full week per month with Battershaw. See *id.* Kenner's move 100 miles away from Battershaw makes it impractical to impossible for the parties to maintain this schedule, particularly during the school year.

The district court determined that the parties' prior parenting plan constituted a joint physical custody plan and that modification was necessary to accommodate the move. Referencing *Hill v. Hill*, 20 Neb. App. 528, 827 N.W.2d 304 (2013), the district court found that although the parties' stipulated parenting plan stated that Kenner previously had physical custody of Brayden, in fact the parties' fairly even split of time and share of day-to-day parenting constituted a joint physical custody arrangement. Neither party appeals this determination. The parties asserted, and the district court agreed, that the move at issue in this case makes the custody plan of the prior decree unworkable and constitutes a change in circumstances warranting a custody modification. We agree.

*Best Interests.*

Kenner argues that the district court abused its discretion in determining that the best interests of Brayden were met by granting custody to Battershaw. We disagree.

[3,4] Before custody may be modified based upon a material change in circumstances, it must be shown that the modification is in the best interests of the child. *Schrag v. Spear, supra*. Courts determining custody and parenting arrangements must consider (1) the relationship of the minor child to each parent prior to the commencement of the action or any subsequent hearing; (2) the desires and wishes of the minor child, if of an age of comprehension but regardless of chronological age, when such desires and wishes are based on sound reasoning; (3) the general health, welfare, and social behavior of the minor child; (4) credible evidence of abuse inflicted on any family or household member; and (5) credible evidence of child abuse or neglect or domestic intimate partner abuse. Neb. Rev. Stat. § 43-2923 (Cum. Supp. 2014).

[5] In addition to these statutory "best interests" factors, a court making a child custody determination may consider matters such as the moral fitness of the child's parents, including the parents' sexual conduct; respective environments offered

by each parent; the emotional relationship between child and parents; the age, sex, and health of the child and parents; the effect on the child as the result of continuing or disrupting an existing relationship; the attitude and stability of each parent's character; and the parental capacity to provide physical care and satisfy the educational needs of the child. *Schrag v. Spear*, 290 Neb. 98, 858 N.W.2d 865 (2015).

In this case, the evidence at trial demonstrates that Brayden has strong connections to each of his parents and stepparents. He enjoys activities with both households. Brayden appears to be in generally good health and thriving in school under the parties' prior coparenting arrangement. The record contains no evidence of abuse by either party, nor any suggestion of parental unfitness.

[6] The district court noted that during the in camera interview, Brayden expressed a preference to live and attend school in Valentine, with his father. Section 43-2923 provides for consideration of the child's wishes if the child is of an age of comprehension and the child's reasoning is sound. Kenner argues that an 8-year-old child is not old enough to express an opinion that may be considered by the court. We disagree. Kenner cites no authority for the proposition that an 8-year-old child may not be "of an age of comprehension" as required by the statute for the court to consider a child's preference. See § 43-2923. The record reveals that the minor child was 8½ years old at the time of trial. In his interview, Brayden expressed an understanding of the complexity of the decision and articulated relevant components of consideration, including routines, scheduling, proximity to activities, and the home and school environments. Of course, the desires and wishes of the minor child are not determinative of custody but are just a factor to be considered by the trial court, when the child is of an age of comprehension and bases those desires on sound reasoning. See *Adams v. Adams*, 13 Neb. App. 276, 691 N.W.2d 541 (2005). However, we see no evidence that

the district court regarded this factor as determinative, as Kenner argues.

The remaining factors to be considered encompass the stability, environment, and relationships to be impacted by either custody choice. *Schrag v. Spear, supra*. In either household, Brayden would experience some change and disruption of the parties' prior schedule, while also enjoying certain kinds of stability. Bradyen has more ties to the Valentine area, where he has previously lived, than to the Emmett area, although he has some acquaintances in both locations. We also note that Brayden has previously spent more time living with his mother and siblings, but has spent significant time being parented day-to-day by both parents. While all testimony suggested that both homes are emotionally nurturing, the home environments have differences. In particular, Brayden has younger half siblings at Kenner's home and no siblings at Battershaw's home. Testimony suggested benefits both to being raised among siblings and to receiving the attention of an only child. In short, the record revealed that either parent could provide for the child emotionally and physically.

Kenner argues that the district court should have given more weight to keeping Brayden in a home with his half siblings. In so arguing, she notes that it is generally sound public policy to keep children together when a marriage is dissolved. *Ziebarth v. Ziebarth*, 238 Neb. 545, 471 N.W.2d 450 (1991). However, this is not a dissolution of marriage case where the custody of all children is being determined as a result of the parties' divorce. Only Brayden's custody is being determined by these proceedings, and a rule requiring him to be kept with his half siblings would mean that a parent having children with a former or subsequent spouse would automatically give that parent preferred status. While a bond with half siblings is certainly an emotional environmental factor that the district court should take into consideration, the focus is on the relationship between the siblings and whether separation will have a detrimental effect on the child. See *Ritter v. Ritter*,

234 Neb. 203, 450 N.W.2d 204 (1990). The district court's order evinces that it considered the relationship between the children and concluded that separation of Brayden from his half siblings would not be detrimental. We disagree with the argument that the district court erred in inadequately considering this factor.

Given the record before us, we cannot find that the district court abused its discretion in awarding custody to Battershaw. An abuse of discretion occurs when a trial court bases its decision upon reasons that are untenable or unreasonable or if its action is clearly against justice or conscience, reason, and evidence. *Schrag v. Spear*, 290 Neb. 98, 858 N.W.2d 865 (2015). A judicial abuse of discretion requires that the reasons or rulings of the trial court be clearly untenable insofar as they unfairly deprive a litigant of a substantial right and a just result. *Id.* In this case, the district court detailed its thoughtful consideration of the evidence in a difficult case. Following a careful de novo review of the record, we find no abuse of discretion.

## CONCLUSION

Following a de novo review of the record, we find no abuse of discretion by the district court and accordingly affirm its order.

Affirmed.