DIANA ELLEN SMITH–HELSTROM, FORMERLY KNOWN AS DIANA
ELLEN YONKER, APPELLANT, V. DAVID LOREN YONKER,
APPELLEE.

544 N.W.2d 93

Filed March 1, 1996.   No. S-95-256.

Katherine Karuschkat, P.C., and Michael E. Piccolo, of
Clough Dawson & Piccolo, for appellant.

Jeffrey M. Wightman and James E. Doyle IV, of Cook, Wightman & Doyle, for appellee.

WHITE, C.J., CAPORALE, FAHRNBRUCH, LANPHIER, WRIGHT, CONNOLLY, and GERRARD, JJ.

CAPORALE, J.

# I. INTRODUCTION

This interstate child custody dispute challenges the order of the Nebraska dissolution court modifying its earlier decree so as to remove the custody of the parties' minor son, Michael Douglas Yonker, from the petitioner–appellant mother, Diana Ellen Smith–Helstrom, who resides in Colorado, and place it with the respondent–appellee father, David Loren Yonker, who resides in Nebraska. In appealing to the Nebraska Court of Appeals, the mother asserted that the dissolution court erred in (1) taking jurisdiction, (2) ruling as it did with regard to custody, and (3) determining her child support obligation. Under our authority to regulate the caseloads of the two courts, we, on our own motion, removed the matter to our docket. We now, for the reasons hereinafter set forth, reverse, and remand for further proceedings.

# II. FACTS

The parties married on December 27, 1986; their son was born on March 8, 1988; and the marriage was dissolved on June 8, 1989. The decree permitted the mother to permanently relocate to Colorado with her son and granted the father reasonable visitation rights.

On July 13, 1990, the father filed an application in the dissolution court seeking modification of the custody provisions of its decree. The mother filed a responsive pleading and counterclaim seeking to have the motion dismissed. She also filed a pleading seeking to have the father held in contempt. After the dissolution court appointed a guardian ad litem for the son and held a number of hearings, a 2-day trial commenced on October 9, 1991. Both parties were present and represented by counsel, and both parties presented evidence. However, on October 10, the trial judge declared a mistrial and, for reasons the record does not disclose, recused himself.

The parties thereafter continued to conduct discovery, and on April 1, 1992, the father served upon the mother, her attorney, and the guardian ad litem notice that a hearing would be held on June 8 on the father's application to modify the custody arrangement. In addition, the father filed a motion asking for an order directing the mother to show cause why she should not be held in contempt for failing to abide by the court's visitation orders. The mother neither filed a response nor appeared at the hearing.

Upon the testimony of only the father and the Nebraska guardian ad litem, the dissolution court, on June 8, 1992, entered an order changing custody of the son, as set forth in part I. The court also ordered the mother to pay child support in the amount of $345 per month.

In the meantime, the mother had, on February 28, 1992, commenced an action in Colorado, asking the Colorado court to exercise jurisdiction over her, her son, and the issues concerning custody of him. On April 24, the Colorado court, in proceedings at which the father was represented by counsel and the son by a Colorado guardian ad litem, exercised jurisdiction. It determined that notwithstanding the pending proceedings in Nebraska, under Colorado's version of the Uniform Child Custody Jurisdiction Act, Colo. Rev. Stat. Ann. § 14-13-101 et seq. (West 1989), hereinafter referred to as the Colorado child custody act, the son's "home state" was Colorado, as he had lived there continuously since January 1989.

In its order of June 3, 1992, the Colorado court continued custody of the son with the mother. Because of the ongoing jurisdictional dispute, the court forbade the father from removing the son from Colorado and required that any visitation be under supervised conditions until the jurisdictional dispute was resolved. For reasons which the record does not reveal, the father's effort to appeal the Colorado court's order was unsuccessful.

The father initially refused to abide by the restrictions the Colorado court placed upon his visitation with his son. As a result, he did not see his son for approximately 2½ years. Finally, in February 1994, the father notified the Colorado

guardian ad litem that he would agree to the supervised visitation. The first Colorado visit was supervised by a police officer and took place in mid–March 1994.

A second visit occurred at a Colorado mall on March 30, 1994. The supervising police officer brought the son to the mall parking lot to meet with the father. The father gave the keys to his automobile to the officer and then went inside the mall with his son. The child's grandfather was also present for this visit. While the officer and the grandfather were drinking coffee, the father purchased a rabbit for his son at a mall store. Shortly thereafter, the father told the officer that he was going to take his son to look in one of the stores for some other items. Unbeknownst to the officer, the father had another automobile at the mall, which he used to drive his son to the airport. The father, a licensed pilot, then put his son and the rabbit in a private plane and flew to Nebraska. Enclosing a picture of his son and the rabbit, the father then sent a letter to the Colorado guardian ad litem thanking her for her help in arranging to have the visitation in a public place, since this facilitated the "release" of his son from Colorado.

On June 24, 1994, the mother filed in the dissolution court an application to modify the court's custody order of June 8, 1992. She later questioned whether the dissolution court had subject matter jurisdiction enabling it to enter the order, and still later filed an application for custody of her son. Following the taking of evidence from the parties and the Nebraska guardian ad litem, the dissolution court denied the mother any relief.

## III. ANALYSIS

With that background, we turn our attention to the mother's assignments of error.

### 1. JURISDICTION

In challenging the dissolution court's finding that it had subject matter jurisdiction to entertain these proceedings, the mother argues that its exercise of such jurisdiction conflicts with the federal Parental Kidnaping Prevention Act of 1980, 28 U.S.C. § 1738A (1994), hereinafter referred to as the kidnapping act. She points out that the kidnapping act confers

jurisdictional priority to the home state unless there is an emergency, or unless there is a case still pending in a jurisdiction in which at least one party resides. § 1738A(c) and (d). Since, according to the mother, neither of the exceptions to home state jurisdictional priority existed at the time she filed the Colorado custody action, Colorado is the proper forum to exercise jurisdiction over the custody dispute.

### (a) Scope of Review

When a jurisdictional question does not involve a factual dispute, its determination is a matter of law, which requires an appellate court to reach a conclusion independent from the decisions made by the inferior courts. *Payne v. Nebraska Dept. of Corr. Servs., ante* p. 150, 542 N.W.2d 694 (1996); *State ex rel. Grape v. Zach*, 247 Neb. 29, 524 N.W.2d 788 (1994).

### (b) Application of Law to Facts

"Home state," as defined under the kidnapping act, the Colorado child custody act, and the Nebraska Child Custody Jurisdiction Act, hereinafter referred to as the Nebraska child custody act, Neb. Rev. Stat. § 43–1201 et seq. (Reissue 1993), is the state where the son lived for 6 months immediately prior to filing the matter before the court. § 1738A(b)(4); § 14–13–103(5); § 43–1202(5). As the son had lived exclusively and continuously with the mother in Colorado from at least June 1989 through March 30, 1994, it is clear that under each of the aforementioned acts, Colorado was indeed the son's home state. This was the case not only at the time of the mother's filing of the custody action in Colorado, but also at the time the father filed his application in Nebraska.

However, this determination is not dispositive of the jurisdictional issue. *Range v. Range*, 232 Neb. 410, 414, 440 N.W.2d 691, 694 (1989), held that a Nebraska court had jurisdiction over a custody modification proceeding instigated in Nebraska, even though the child had moved to Georgia, which had become the child's home state, noting:

> " 'Exclusive continuing jurisdiction is not affected by the child's residence in another state for six months or more. Although the new state becomes the child's home state, significant connection jurisdiction continues in the state of

the prior decree where the court record and other evidence exists and where one parent or another contestant continues to reside. *Only when the child and all parties have moved away is deference to another state's continuing jurisdiction no longer required.'* . . ."

(Emphasis in original.) Quoting *Kumar v. Superior Court of Santa Clara Cty.*, 32 Cal. 3d 689, 652 P.2d 1003, 186 Cal. Rptr. 772 (1982), quoting Brigitte M. Bodenheimer, *Interstate Custody: Initial Jurisdiction and Continuing Jurisdiction under the UCCJA*, 14 Fam. L.Q. 203 (1981). We have thus recognized that the Nebraska child custody act establishes a strong jurisdictional preference for the state which originally determined custody to exercise its continuing jurisdiction, provided the requirements of § 43–1203(1)(b), detailed hereinafter, are satisfied. *State ex rel. Grape, supra.* This continuing jurisdiction concept is in accord with the purpose of the general Uniform Child Custody Jurisdiction Act, 9 U.L.A. 115 (1988), to achieve greater stability of custody arrangements and to avoid forum shopping. *In re Interest of L.W.*, 241 Neb. 84, 486 N.W.2d 486 (1992).

In this case, there can be no question that on the day the Nebraska dissolution court entered its initial decree on June 8, 1989, it took undisputed jurisdiction over matters relating to the custody of the son. As the decree–issuing state, Nebraska has continuing jurisdiction over these matters so long as the requirements of § 43–1203 are satisfied. That section provides:

(1) A court of this state which is competent to decide child custody matters has jurisdiction to make a child custody determination by initial or modification decree if:

. . . .

(b) It is in the best interest of the child that a court of this state assume jurisdiction because (i) the child and his or her parents, or the child and at least one contestant, have a significant connection with this state and (ii) there is available in this state substantial evidence concerning the child's present or future care, protection, training, and personal relationships . . . .

In considering the mother's challenge to its exercise of jurisdiction, the dissolution court concluded that the

requirements of § 43–1203(1)(b) were met because the son and the father had significant connections with Nebraska and because substantial evidence concerning the child's present or future care, protection, training, and personal relationships was available within Nebraska. The facts that the dissolution decree had been entered in Nebraska; that the son had lived in Nebraska; that the father, as well as a significant number of other relatives, lived in Nebraska; and that the mother had returned to Nebraska to litigate the father's application for child custody modification, which ended in a mistrial, make it apparent that the threshold requirements of § 43–1203(1)(b) were met.

In so determining, we are not unmindful that in *Mace v. Mace,* 215 Neb. 640, 341 N.W.2d 307 (1983), we, upon determining that Nebraska was the home state, refused to enforce a foreign custody judgment. While in so ruling we observed that the home state position was of "utmost importance," 215 Neb. at 648, 341 N.W.2d at 312, it is also worthy of note that the foreign court in *Mace* had not exercised jurisdiction in substantial conformity with an act similar to the Nebraska child custody act, as required by § 43–1206, and its decree was thus not enforceable in Nebraska in any event. Moreover, as noted in *Range v. Range,* 232 Neb. 410, 440 N.W.2d 691 (1989), as all the evidence concerning the lives of the young children in *Mace* was in Nebraska, Nebraska had become their home state.

### (i) Kidnapping Act

The question therefore becomes whether the dissolution court's exercise of jurisdiction was in conformity with the requirements of the kidnapping act.

That act is aimed at combating the problem of parental child snatching and forum shopping in interstate child custody disputes. At the time it was enacted, sponsors of the act estimated that between 25,000 and 100,000 children were kidnapped by parents who had lost a custody battle in one state and moved to another state in order to relitigate the issue. *Thompson v. Thompson,* 484 U.S. 174, 108 S. Ct. 513, 98 L. Ed. 2d 512 (1988). The act was intended to provide uniformity

that the general uniform child custody act had failed to produce, as many states had modified it. *Meade v. Meade*, 812 F.2d 1473 (4th Cir. 1987).

The kidnapping act imposes upon the states a duty to enforce a child custody determination entered by the court of a sister state if that determination is consistent with the terms of the act. *Thompson, supra.* For a state court's custody decree to be consistent with the kidnapping act, the state must have jurisdiction under its own local law and must meet one of five conditions set out in § 1738A(c)(2). If a state has exercised jurisdiction consistent with the kidnapping act, no other state may exercise concurrent jurisdiction, even if it would have been empowered to take jurisdiction in the first instance. *Thompson, supra.*

As the dissolution court exercised jurisdiction in accordance with the Nebraska child custody act, the first requirement of the kidnapping act is satisfied, and we need only determine whether the exercise of jurisdiction meets one of the other aforementioned five conditions. The one most applicable is subparagraph (E) of § 1738A(c)(2), which provides that a court has continuing jurisdiction pursuant to subsection (d), which reads:

> The jurisdiction of a court of a State which has made a child custody determination consistently with the provisions of this section continues as long as the requirement of subsection (c)(1) of this section [that the state have jurisdiction under its own law] continues to be met and such State remains the residence of the child or of any contestant.

All three of the requirements of § 1738A(d) are satisfied in the present case. First, the dissolution court had previously, on June 8, 1989, made a child custody determination in the form of its dissolution decree. Second, under the provisions of the Nebraska child custody act, Nebraska continued to have subject matter jurisdiction over the case. *Range, supra*; *In re Interest of L.W.*, 241 Neb. 84, 486 N.W.2d 486 (1992); *State ex rel. Grape v. Zach*, 247 Neb. 29, 524 N.W.2d 788 (1994). Third, Nebraska remained the residence of the father, one of the contestants. It is thus clear that the dissolution court's exercise

of jurisdiction was fully consistent with the provisions of the kidnapping act.

### (ii) Emergency Jurisdiction

The mother also raises a final different but related argument as to why it was error for 'the dissolution court to hold that it had jurisdiction in this case. According to the mother, when the Colorado court found in its April 24, 1992, order that an emergency situation existed which required Colorado to take jurisdiction to prevent mistreatment and abuse of the son with regard to visitation with the father, the dissolution court was, under both the Nebraska child custody act and the kidnapping act, required to relinquish jurisdiction and permit Colorado to litigate the emergency issue. It is true, of course, that both of those acts contain provisions which allow a court to exercise jurisdiction if the child is present in the state and the child has been abandoned or it is necessary in an emergency to protect the child because he or she has been subjected to or threatened with mistreatment or abuse. § 43-1203(1)(c); § 1738A(c)(2)(C). However, emergency jurisdiction under those provisions is by its very nature limited. As we noted in *In re Interest of L.W.*, 241 Neb. at 101, 486 N.W.2d at 498, quoting Brigitte M. Bodenheimer, *Interstate Custody: Initial Jurisdiction and Continuing Jurisdiction under the UCCJA*, 14 Fam. L.Q. 203 (1981):

> "[T]his special power to take protective measures does not encompass jurisdiction to make permanent custody determinations or to modify the custody decree of a court with continuing jurisdiction. Emergency jurisdiction confers authority to make temporary orders, including temporary custody for a limited period of time, pending proceedings in the state with regular jurisdiction under the [general uniform child custody act]."

Thus, while the Colorado court may have had the authority to enter a temporary custody order for a limited period of time, it did not have the power to make a permanent custody determination.

### (c) Resolution

Consequently, the dissolution court properly exercised its subject matter jurisdiction.

## 2. CUSTODY DETERMINATION

However, the mother challenges the dissolution court's custody determination, claiming that the award of custody to the father was an abuse of discretion.

### (a) Scope of Review

An appellate court reviews child custody determinations de novo on the record. Such determinations are initially entrusted to the discretion of the trial judge and will be affirmed unless they constitute an abuse of discretion. Where credible evidence is in conflict on a material issue of fact, an appellate court considers, and may give weight to, the fact that the trial judge heard and observed the witnesses and accepted one version of the facts rather than another. *State ex rel. Reitz v. Ringer*, 244 Neb. 976, 510 N.W.2d 294 (1994).

### (b) Application of Law to Facts

We begin by recalling that ordinarily, custody of a minor child will not be modified unless there has been a material change of circumstances showing that the custodial parent is unfit or that the best interests of the child require such action. The party seeking modification of child custody bears the burden of showing such a change in circumstances. *State ex rel. Reitz, supra.*

In determining a child's best interests in custody and visitation matters, Neb. Rev. Stat. § 42–364(2) (Cum. Supp. 1994) provides that the factors to be considered shall include, but not be limited to, the following:

> (a) The relationship of the minor child to each parent prior to the commencement of the action or any subsequent hearing;
>
> (b) The desires and wishes of the minor child if of an age of comprehension regardless of chronological age, when such desires and wishes are based on sound reasoning;

(c) The general health, welfare, and social behavior of the minor child; and

(d) Credible evidence of abuse inflicted on any family or household member. For purposes of this subdivision, abuse and family or household member shall have the meanings prescribed in section 42-903.

We have held that in determining a child's best interests in custody matters, a court may consider, in addition to the statutory factors, matters such as the moral fitness of the child's parents, including the parents' sexual conduct; respective environments offered by each parent; the emotional relationship between child and parents; the age, sex, and health of the child and parents; the effect on the child as the result of continuing or disrupting an existing relationship; the attitude and stability of each parent's character; parental capacity to provide physical care and satisfy educational needs of the child; the child's preferential desire regarding custody if the child is of sufficient age of comprehension, regardless of chronological age, and when such child's preference is based on sound reasons; and the general health, welfare, and social behavior of the child. *Ritter v. Ritter*, 234 Neb. 203, 450 N.W.2d 204 (1990); *Christen v. Christen*, 228 Neb. 268, 422 N.W.2d 92 (1988).

The record establishes that prior to the abduction of the son on March 30, 1994, the mother had been the child's primary caretaker. She provided a loving, nurturing, and stable environment for him and his half brother, Zachary, with whom the son has a close relationship. The mother has now remarried and is living in Englewood, Colorado, employed as a stockbroker.

It is true that due to the abduction of her son, the mother is receiving treatment for posttraumatic stress syndrome; however, her problems in this regard are not expected to interfere with her ability to parent. The mother has shown remarkable character and maturity in dealing with a difficult situation. Despite the time and expense involved, as well as the inconvenience of having the visits supervised, the mother has not missed one visit with the son since the abduction.

This court is aware that the mother has admitted violating a provision of the dissolution decree which prohibited her

cohabitation with men not her husband. The violation of a court decree is unquestionably a serious matter. But it is the best interests of the son which must be our paramount concern. While it is true that evidence concerning the moral fitness of the parents, including sexual conduct, can be considered as a factor in determining a child's best interests, *Ritter, supra,* absent a showing that the mother's cohabitation adversely affected her son, we do not give this factor much weight, *Kennedy v. Kennedy,* 221 Neb. 724, 380 N.W.2d 300 (1986).

In contrast, two factors weigh heavily against awarding custody to the father. First, as a result of his refusal to exercise supervised visitation in Colorado, he did not have any contact with his son for approximately $2^1/2$ years. While we understand the father's frustration with the fact that Colorado did not have authority to issue such restrictions, his failure to submit to the restrictive conditions nonetheless indicates much about his judgment and the priority he places on his son's well–being. Certainly, visitation in Colorado was open to the father. The Colorado guardian ad litem submitted 68 pages of correspondence at trial between herself and the father in which she attempted to arrange supervised visitation in compliance with the Colorado order. Second, in abducting his son, the father brazenly placed ego over the child's best interests. As the dissolution court itself noted, "the actions of the [father] were not based on a proper reflection of what was in the best interest of the minor child . . . ." Indeed, when compared to the father's violation of the Colorado order, the mother's violation of the dissolution decree pales into relative insignificance.

Moreover, the record demonstrates that the father's lack of judgment in abducting his son is by no means an isolated instance, but, rather, part of an underlying pattern. He generally refuses to follow rules and submit to authority. In January 1991, he, in violation of the dissolution decree, extended visitation without giving the mother advance notice. On other occasions, the assistance of a Nebraska sheriff was needed to deal with problems concerning visitation. Moreover, the father appears to have an almost Machiavellian ability to rationalize his actions. He is proud of the fact that he abducted his son and insists that he did the right thing. He is also able to rationalize other

instances of breaking the law. For example, the father lost his driver's license because of speeding violations and has only a work permit, which permits him to drive for work reasons only. Yet, he testified that he is able to drive his son to school every day and that he "arranges" to do something for his work during each trip.

### (c) Resolution

Therefore, we must conclude on our de novo review that it is in the best interests of the son that his care, custody, and control be again placed in and with the mother, subject to reasonable visitation by the father. The dissolution court shall establish a schedule for visits between the father and son to take place in or near Englewood, Colorado, such visits to be conducted in the presence of a third party in such a manner as to assure that the father cannot once again abduct his son. The dissolution court shall also set an appropriate amount of child support for the father to pay, a determination which makes further comment on the mother's assignment of error in that regard unnecessary. In calculating the father's child support obligation, the dissolution court shall take into account that the father by choice works only 5½ months per year. The proper amount of child support is determined not necessarily by a parent's earnings, but by a parent's "earning capacity." § 42–364(6); *Schulze v. Schulze*, 238 Neb. 81, 469 N.W.2d 139 (1991) (dissolution of husband's partnership and employment at lesser–paying job did not warrant reduction of child support obligation); *Lainson v. Lainson*, 219 Neb. 170, 362 N.W.2d 53 (1985). Thus, the dissolution court shall impute income to the father commensurate with his earning capacity.

### IV. JUDGMENT

The judgment of the dissolution court is reversed and the cause remanded for further proceedings consistent with this opinion.

REVERSED AND REMANDED FOR FURTHER PROCEEDINGS.