NORBERT DORSZYNSKI AND DELORES DORSZYNSKI, APPELLANTS, V. HOWARD ARTHUR REIER, JR., APPELLEE.

578 N.W.2d 457

Filed April 21, 1998.   No. A-97-995.

Michael J. Shaughnessy, of Shaughnessy Law Office, for appellants.

Charles R. Maser, of Bradley, Maser, Kneale, & Elsbernd, P.C., for appellee.

HANNON, SIEVERS, and MUES, Judges.

MUES, Judge.

## INTRODUCTION

Norbert Dorszynski and Delores Dorszynski appeal an order of the district court for Hall County dismissing their petition for grandparent visitation. This appeal involves the issue of whether a proceeding for grandparent visitation under Neb. Rev. Stat. §§ 43-1801 through 43-1803 (Reissue 1993) is subject to the Nebraska Child Custody Jurisdiction Act (NCCJA), Neb. Rev. Stat. §§ 43-1201 through 43-1225 (Reissue 1993, Cum. Supp. 1994 & Supp. 1995). We conclude that it is.

## BACKGROUND

On January 17, 1997, the Dorszynskis filed a petition in Hall County District Court. The Dorszynskis' petition alleges that Howard Arthur Reier, Jr. (Reier), has custody of Rochelle Reier (Rochelle), the Dorszynskis' granddaughter, and that Reier lives in Montana, while Rochelle's mother, Kathleen Jarvio, lives in Wyoming. The petition alleges that the Dorszynskis are the parents of Jarvio and that her marriage to Reier was dissolved in Hall County District Court in August 1985. At that time, Jarvio was granted custody of Rochelle. The petition further alleges that a district court in the State of Wyoming subsequently granted Reier custody. The final allegation is that the parties had attempted to reconcile their differences but those differences were irreconcilable, which left them no recourse but to seek redress from the court. Thus, the Dorszynskis asked the district court to grant them grandparent visitation with Rochelle.

Reier answered, admitting all of the allegations except that his marriage to Jarvio had been dissolved in Hall County and that the parties have irreconcilable differences forcing them to seek legal recourse. On July 9, 1997, Reier filed a motion to dismiss the action, alleging that the State of Nebraska no longer had subject matter jurisdiction.

A hearing was held on Reier's motion to dismiss on August 5, 1997, whereat the only evidence offered was a copy of a modification order filed on August 31, 1995, in the Carbon County District Court, State of Wyoming. The order is in a case

entitled "Howard Arthur Reier, Jr., Petitioner, vs. Kathleen A. Reier, a/k/a Kathleen A. Jarvio, Respondent," civil case No. 95C-109. It reflects that upon receipt of evidence, the court made certain findings, including that it had jurisdiction over the parties and the subject matter; that Jarvio had been a bona fide resident of Wyoming for at least 60 days before the action was commenced and had "waived any objection to jurisdiction and venue in open court"; that the parties had been divorced by decree of the Hall County, Nebraska, district court on August 21, 1985, wherein custody of Rochelle, born January 12, 1985, was granted to Jarvio; and that significant changes had occurred since that decree justifying a modification. The court then went on to grant Reier a modification of the decree by awarding joint custody of Rochelle to both parties, with physical custody granted to Reier. Jarvio was granted certain visitation rights and was not ordered to pay child support for reasons unnecessary to this opinion. The Wyoming court's order is comprehensive and not unlike that expected to be entered under similar circumstances by a court of this state.

In a written order filed August 21, 1997, the Hall County District Court found that the marriage of Jarvio and Reier had been dissolved in Hall County on August 21, 1985, and that custody of Rochelle was given to Jarvio at that time. The court further found that pursuant to agreement of the parties, custody was changed by the district court for Carbon County, Wyoming, on August 31, 1995, wherein Jarvio and Reier "submitted themselves to the jurisdiction of the Wyoming court and the child was a resident of the state of Wyoming." Observing that § 43-1803 provides that grandparents seeking visitation have the right to file a petition in the district court of the county in which the dissolution took place, the district court nonetheless found that the parents had subsequently "waived jurisdiction to the state of Wyoming which assumed jurisdiction of the matter of the custody and well-being of the minor child." Determining that it was not in the child's best interests to have custody or visitation matters decided and orders entered in more than one forum in regard to parents or grandparents, that Wyoming had assumed jurisdiction, and that Nebraska was an inconvenient forum under the NCCJA and specifically under § 43-1207, the

court refused "to assume jurisdiction and issue more orders affecting the life of the child which may or may not be in conflict with the court in Wyoming." The Dorszynskis' petition was dismissed, and they timely appealed.

## ASSIGNMENTS OF ERROR

The Dorszynskis allege that the district court misinterpreted the NCCJA and that it erred in finding that Nebraska was an inconvenient forum to decide grandparent visitation and in dismissing the petition before a hearing on the merits was held.

## STANDARD OF REVIEW

■ When a jurisdictional question does not involve a factual dispute, its determination is a matter of law, which requires an appellate court to reach a conclusion independent from the decisions made by inferior courts. *Smith-Helstrom v. Yonker*, 249 Neb. 449, 544 N.W.2d 93 (1996).

■ The review of a judgment in a proceeding under the NCCJA is de novo. In the absence of an abuse of discretion, the judgment of the trial court will be affirmed. *Van Norman v. Upperman*, 231 Neb. 524, 436 N.W.2d 834 (1989).

## DISCUSSION

It is obvious from the allegations of the Dorszynskis' petition that they were seeking visitation pursuant to Nebraska's grandparent visitation statutes, §§ 43-1801 through 43-1803. Section 43-1803(1) requires that a grandparent seeking visitation in a case where a dissolution of marriage has occurred shall file a petition for such visitation in the district court of the county in which the dissolution proceeding took place. The Dorszynskis filed their petition in the district court for Hall County, which is clearly where the marriage of Jarvio and Reier was dissolved in 1985. However, the evidence is that all interested parties, save the Dorszynskis, reside outside Nebraska and that Rochelle's current physical custody in Reier is the result of an order issued by a district court in the State of Wyoming. These allegations are contained in the Dorszynskis' petition and appear to be mandated by § 43-1209(1)(b). This statute, a part of the NCCJA, is obviously designed to alert a court to real or potential jurisdictional disputes and to avoid jurisdictional competi-

tion and conflict with courts of other states in matters of child custody. See § 43-1201.

The NCCJA, as its name suggests, addresses the matter of child custody, the end goal being that litigation concerning the custody of a child take place in the state which can best decide the case. See § 43-1201. Certainly the Dorszynskis do not seek custody of Rochelle in the strict sense of the term. However, the NCCJA speaks to the jurisdiction of courts of this state to make child custody determinations by initial or modification decree. See § 43-1203. A child custody determination is defined as "a court decision and court orders and instructions providing for the custody of a child, including visitation rights," § 43-1202(2), and a contestant is defined as "a person, including a parent, who claims a right to custody *or visitation rights with respect to a child*" (emphasis supplied), § 43-1202(1).

We believe the Dorszynskis' proceeding to obtain visitation rights squarely fits the aforesaid definitions. The Wyoming order clearly contains no visitation rights in the Dorszynskis, and while the Nebraska decree is not in our record, a fair inference is that it did not grant grandparent visitation either. To that extent, the present application might be viewed as seeking a modification decree. See § 43-1202(7). On the other hand, it might also be characterized as seeking an initial decree, at least insofar as grandparent visitation is concerned. See § 43-1202(6). But whether seeking an initial order or one modifying prior orders of a Nebraska or Wyoming court, there is little doubt that the Dorszynskis, as grandparents, have commenced a proceeding in which a custody determination, visitation, is the issue. The NCCJA makes no distinction between grandparents, parents, or any other person who claims a right to custody or visitation. To allow the venue provisions of § 43-1803 to circumvent the jurisdictional considerations of the NCCJA would create disharmony and frustrate the purpose of the NCCJA. Thus, despite the Dorszynskis' petition's complying with the venue provisions of § 43-1803, we conclude that the provisions of the NCCJA control the issue of whether the Hall County District Court had jurisdiction over the grandparent visitation proceeding under §§ 43-1801 through 43-1803. Accordingly,

we hold that when grandparent visitation is sought in a Nebraska court through the modification of another state's order of custody, the provisions of the NCCJA control the issue of whether the Nebraska court has jurisdiction over the proceeding.

This holding is consistent with cases from other jurisdictions. See, *Matter of Smith*, 840 S.W.2d 268 (Mo. App. 1992) (holding that court lacked jurisdiction under Uniform Child Custody Jurisdiction Act (UCCJA) to determine grandparents' visitation rights because children had lived outside of state for 6 months prior to commencement of action); *In re Cifarelli*, 158 Vt. 249, 611 A.2d 394 (1992) (holding that under UCCJA, Bermuda was proper forum to determine custody and grandparent visitation issues because child had no home state since she was only 5 months old and had lived in several states when her parents died, and child had closest connection to Bermuda since she had been living there for 13 months prior to grandparent's action being filed); *Lee v. Meeks*, 592 So. 2d 282 (Fla. App. 1991) (holding that UCCJA had not displaced principles of law traditionally applied to habeas corpus proceedings and that in ruling on and denying habeas corpus, trial court's determination of child's best interest was required, thus Florida trial court properly denied enforcement of Tennessee court's order granting temporary custody to grandparents); *In re Gibson*, 61 Ohio St. 3d 168, 573 N.E.2d 1074 (1991) (holding that there was no jurisdiction under UCCJA where grandfather was seeking visitation rights when no precipitating event such as parental death or divorce had occurred, and that UCCJA's definition of custody limited grandparent visitation issues to actions under UCCJA); *Counts v. Bracken*, 494 So. 2d 1275 (La. App. 1986) (holding that Louisiana court did not have jurisdiction under UCCJA to determine grandparent visitation when custodial parent and child had lived continually in Arkansas for 7 years).

In determining whether a court should entertain a child custody proceeding having interstate implications, the court should first determine whether it has jurisdiction and then determine whether it is appropriate to exercise jurisdiction. *Van Norman v. Upperman*, 231 Neb. 524, 436 N.W.2d 834 (1989).

*Did District Court Have Jurisdiction?*

Reier's motion alleges that the Hall County District Court does not have subject matter jurisdiction because the State of Wyoming has assumed jurisdiction over Rochelle.

■ Section 43-1203 addresses jurisdiction under the NCCJA and makes it apparent that such determination cannot be made in a vacuum. Rather, factual determinations are required on several salient matters to be discussed. As stated earlier, the evidence in this case is sparse. The pleadings in Hall County District Court and exhibit 1, the Wyoming court's modification order, form the basis of our review. Matters contained in pleadings are judicial admissions insofar as the adversary is concerned, *Miller v. Radtke*, 230 Neb. 561, 432 N.W.2d 542 (1988), and admissions contained in a defendant's answer waive all controversy concerning the matter, *State ex rel. Douglas v. Morrow*, 216 Neb. 317, 343 N.W.2d 903 (1984). Thus, the substance of the Dorszynskis' petition was, for the most part, established by Reier's answer. The only other evidence in our record is exhibit 1.

Section 43-1203(1) provides, in pertinent part, that a court of this state has jurisdiction to make a child custody determination if:

(a) This state (i) is the home state of the child at the time of commencement of the proceeding, or (ii) had been the child's home state within six months before commencement of the proceeding and the child is absent from this state because of his or her removal or retention by a person claiming his or her custody or for other reasons, and a parent or person acting as parent continues to live in this state;

(b) It is in the best interest of the child that a court of this state assume jurisdiction because (i) the child and his or her parents, or the child and at least one contestant, have a significant connection with this state and (ii) there is available in this state substantial evidence concerning the child's present or future care, protection, training, and personal relationships;

(c) The child is physically present in this state and (i) the child has been abandoned or (ii) it is necessary in an

emergency to protect the child because he or she has been subjected to or threatened with mistreatment or abuse or is otherwise neglected;

(d)(i) It appears that no other state would have jurisdiction under prerequisites substantially in accordance with subdivision (a), (b), or (c) of this section, or another state has declined to exercise jurisdiction on the ground that this state is the more appropriate forum to determine the custody of the child, and (ii) it is in the best interest of the child that this court assume jurisdiction; or

(e) The child is not an Indian child over which jurisdiction is otherwise provided under the Nebraska Indian Child Welfare Act.

Subsections (1)(c) and (e) are not applicable here based on the pleadings and evidence.

Thus, there are potentially three bases upon which the district court here could exercise jurisdiction over the Dorszynskis' proceedings to obtain grandparent visitation. The first is the "home state" prong, subsection (1)(a). Home state is defined in pertinent part in § 43-1202(5) as the state in which the child immediately preceding the time involved lived with his or her parents, a parent, or a person acting as parent, for at least 6 consecutive months.

In this regard, the record establishes that the Dorszynskis live in Nebraska, Jarvio in Wyoming, and Rochelle and Reier in Montana. How long Rochelle had lived outside Nebraska is neither alleged nor directly addressed by the evidence. However, the Wyoming court order was entered on August 31, 1995, and according to its terms, Jarvio then resided in Wyoming and had for at least 60 days. The Wyoming order changed physical custody to Reier, implying that Rochelle had resided with Jarvio immediately prior to the order and with Reier immediately following it. The evidence does not clearly establish where Reier resided at the time of the Wyoming order or how long Reier has resided in Montana. The inference is that Reier resided in either Montana or Wyoming at the time of the August 1995 Wyoming order and that he has continued to do so since that time with Rochelle in his physical custody. Thus, the evidence clearly demonstrates that Nebraska was not Rochelle's home state

when the petition was filed, and the only reasonable inference is that she had not resided in Nebraska within the 6 months prior to such filing. No jurisdiction exists under § 43-1203(1)(a).

The next potential basis for the exercise of jurisdiction is what we will refer to as the "significant connection—substantial evidence" grounds of § 43-1203(1)(b). The Dorszynskis, citing *Range v. Range*, 232 Neb. 410, 440 N.W.2d 691 (1989), argue that Nebraska's jurisdiction was not affected by the fact that Rochelle has a new home state. Indeed, the NCCJA establishes a strong jurisdictional preference for the state which originally determined custody to exercise continuing jurisdiction, provided the requirements of § 43-1203(1)(b) are satisfied. *Smith-Helstrom v. Yonker*, 249 Neb. 449, 544 N.W.2d 93 (1996). This continuing jurisdiction concept furthers the overall purpose of the act, which is to achieve greater stability and to avoid forum shopping. See *id.*

While the Dorszynskis, as residents of Nebraska and as "contestants" under the NCCJA, presumably have a significant connection with Nebraska, Rochelle had lived outside the state for over 18 months at the time the petition was filed; there is no evidence in the record attempting to establish that Rochelle continues to have any connection with Nebraska except for the Dorszynskis, and there is no evidence of the nature of Rochelle's relationship with the Dorszynskis or with any other person in this state. Thus, there is no showing that there is substantial evidence connecting Nebraska to Rochelle's present or future care, protection, training, and personal relationships. Indeed, the opposite prevails on our review. It is clear from the sparse record before us that the conditions of § 43-1203(1)(b) were not satisfied. As stated in *Range*:

> " 'Although the new state becomes the child's home state, significant connection jurisdiction continues in the state of the prior decree where the court record and other evidence exists and where one parent or another contestant continues to reside. *Only when the child and all parties have moved away is deference to another state's continuing jurisdiction no longer required.*'..."

(Emphasis in original.) 232 Neb. at 414, 440 N.W.2d at 694. Here, the evidence is that Rochelle and her parents have moved away from this state.

We move to the final prong of potential jurisdiction here, § 43-1203(1)(d). This provision authorizes jurisdiction if it appears that no other state would have jurisdiction under prerequisites substantially in accordance with subsections (1)(a), (b), or (c) of § 43-1203 or another state has declined to exercise jurisdiction because Nebraska is the more appropriate forum, and if it is in the child's best interests that Nebraska assume jurisdiction. Both Wyoming and Montana have prerequisites to jurisdiction similar to subsections (1)(a), (b), and (c) of § 43-1203. See, Mont. Code Ann. § 40-4-211 (1997); Wyo. Stat. Ann. § 20-5-104 (Michie 1997). On the evidence here, it would seem that either of these states would be more likely candidates to exercise jurisdiction than Nebraska. Moreover, neither party alleged or proved that either Wyoming or Montana has declined jurisdiction over this matter in favor of Nebraska as the more appropriate forum.

Based on the undisputed evidence before us, we find it highly unlikely that the Hall County District Court had jurisdiction over this proceeding under any of the grounds recognized in § 43-1203.

### Did District Court Properly Decline to Exercise Jurisdiction?

But even were we to assume that jurisdiction existed under § 43-1203, a Nebraska court may still be precluded from modifying a custody decree entered by another state, see § 43-1214 (if court of another state has made custody decree, Nebraska court shall not modify decree unless (1) it appears that state in which decree was rendered no longer has jurisdiction or has declined to assume jurisdiction to modify decree and (2) Nebraska court has jurisdiction), or may decline to exercise jurisdiction if it finds that it is an inconvenient forum, see § 43-1207. The district court's order contains language suggestive of both views, but its dismissal is premised on *declining* to exercise jurisdiction under § 43-1207 rather than on being *precluded* from doing so under § 43-1214. Since we conclude that the court's action was proper under § 43-1207, we need not decide whether it was also appropriate under § 43-1214.

Section 43-1207(1) provides that a court which has jurisdiction to make an initial or a modification decree may

decline to exercise its jurisdiction if it finds that it is an inconvenient forum to make a custody determination under the circumstances of the case and that a court of another state is a more appropriate forum. The finding of an inconvenient forum can be made upon the motion of a party or the court, see § 43-1207(2), and in determining if it is an inconvenient forum, the court shall consider (1) if another state is or recently was the child's home state; (2) if another state has a closer connection with the child and his or her family or with the child and one or more of the contestants; (3) if substantial evidence concerning the child's present or future care, protection, training, and personal relationships is more readily available in another state; (4) if the parties have agreed on another forum which is no less appropriate; and (5) if the exercise of jurisdiction would contravene the purposes of the NCCJA, see § 43-1207(3). A paramount consideration in balancing these various factors is a determination of what court is most able to act in the best interests of the child. See *Van Norman v. Upperman*, 231 Neb. 524, 436 N.W.2d 834 (1989). See, also, *Dennis v. Dennis*, 387 N.W.2d 234 (N.D. 1986).

The review of a judgment in a proceeding under the NCCJA is de novo. In the absence of an abuse of discretion, the judgment of the trial court will be affirmed. *Van Norman v. Upperman, supra.* Nebraska is no longer Rochelle's home state. Rochelle resides in Montana with Reier. Jarvio resides in Wyoming. The State of Wyoming, under standards similar to those in Nebraska and with the agreement of the parties, found that it had jurisdiction in 1995. It appears that evidence of Rochelle's future care, protection, training, and personal relationships is more readily available in Wyoming or Montana. Indeed, it is easy to see how the purposes of the NCCJA would be contravened if the Hall County District Court exercised jurisdiction. It was not an abuse of discretion for the district court to find, from the evidence here, that Nebraska was an inconvenient forum in which to litigate the Dorszynskis' grandparent visitation issue.

The Dorszynskis argue that the district court prevented it from adducing evidence and, thus, that the district court erred in failing to give them an opportunity to prove that they and

Rochelle have a significant connection with this state, that they have a personal relationship with Rochelle, and that it was in Rochelle's best interests for the Hall County District Court to assume jurisdiction. There is no evidence in the record that the Dorszynskis were precluded from offering any evidence concerning any of these or other matters that may have concerned them at the hearing on Reier's motion to dismiss. This hearing was held on July 22, 1997, and was continued to August 5. Some evidence was adduced, and written arguments were submitted to the court. Thus, the Dorszynskis' argument that they were precluded from offering evidence is without merit.

Finally, the Dorszynskis contend that the district court should have contacted the Wyoming court to discuss the availability of grandparent visitation and the jurisdictional issue. The Dorszynskis cite no authority for their proposition. However, § 43-1206(3) does provide in pertinent part that before assuming jurisdiction, a court shall communicate with a court involved in another pending proceeding concerning custody of a child. The district court did not assume jurisdiction. Thus, there was no requirement that the Wyoming court be contacted under § 43-1206(3).

## CONCLUSION

Assuming, without deciding, that the district court had jurisdiction over this custody proceeding, it did not abuse its discretion in declining to exercise such jurisdiction in the instant case. The order dismissing the Dorszynskis' petition is affirmed.

AFFIRMED.