IN THE NEBRASKA COURT OF APPEALS

**MEMORANDUM OPINION AND JUDGMENT ON APPEAL**

PAGE V. PAGE

NOTICE: THIS OPINION IS NOT DESIGNATED FOR PERMANENT PUBLICATION
AND MAY NOT BE CITED EXCEPT AS PROVIDED BY NEB. CT. R. APP. P. § 2-102(E).

RICHARD PAUL PAGE III, APPELLANT,
V.
CHRISTY L. PAGE, APPELLEE.

Filed July 2, 2013.    No. A-12-750.

Appeal from the District Court for Hamilton County: MICHAEL J. OWENS, Judge. Affirmed.

Thomas A. Wagoner for appellant.

John B. McDermott, of Shamberg, Wolf, McDermott & Depue, for appellee.

INBODY, Chief Judge, and IRWIN and MOORE, Judges.

MOORE, Judge.

## INTRODUCTION

Richard Paul Page III appeals from an order of the district court for Hamilton County which granted Christy L. Page's complaint to modify child custody. Finding that there was no abuse of discretion in the district court's finding of a material change in circumstances since the entry of the previous custody order and that the modification was in the best interests of the children, we affirm the district court's order.

## FACTUAL BACKGROUND

During their marriage, Richard and Christy had two children: Austin Page, born in April 2000, and Richard Page IV (Ricky), born in August 2002. In the decree of dissolution entered in January 2006, Richard was awarded physical custody of the children, subject to Christy's reasonable rights of visitation. Christy has since challenged this arrangement. In this appeal, we address Christy's second attempt for modification of child custody.

- 1 -

On October 12, 2006, Christy filed her first complaint for modification, seeking custody of the two minor children. Christy asserted four reasons to support her claim of a material change in circumstances with respect to the custodial arrangement: (1) Richard's home was in a constant chaotic state, (2) Austin was performing poorly in school due to a lack of discipline and structure, (3) Richard had not tended to the children's medical needs, and (4) Christy was the more nurturing parent. After the trial on Christy's complaint, the district court entered an order on March 23, 2007. Noting that only 10 months had elapsed since the date of the decree of dissolution, the court found little support for Christy's arguments and concluded that no material change in circumstances had occurred since the decree.

Christy appealed the district court's order to this court. In a memorandum opinion entered February 5, 2008, in case No. A-07-433, we affirmed the district court's order. We discussed the evidence and arguments presented by Christy that Richard's fiance, Amanda Foster, and her two children had moved into Richard's home; that Richard's home was unclean and unkept; and that Christy was the parent tending to the children's medical needs and more involved in their education. We concluded that Christy had not proved a material change in circumstances because many of the issues about which she had complained existed at the time of the decree of dissolution, such as the condition of Richard's home. We also noted that there was no evidence Amanda and her children residing in the home had any effect upon the welfare of these children and that there was evidence that both parties help the children with their educational needs.

Christy filed another complaint for modification in November 2009, which only concerned specific visitation and was resolved by the parties' subsequent agreement.

The complaint for modification at issue in this appeal was filed by Christy on November 28, 2011, again seeking modification of child custody, alleging a number of reasons to support her claim. In our review of the record, Christy argued and presented evidence on the following allegations during the May 25, 2012, trial: (1) Austin has not received help at home with his schoolwork despite struggling with his grades and nearly failing the sixth grade, (2) Richard has been unable to establish a stable residence, (3) Richard's household is generally in a chaotic state, and (4) Richard has neglected the children's health and hygiene.

At trial, Heather Ferralez testified regarding Austin's performance at school. Ferralez was Austin's primary sixth grade teacher. According to Ferralez, Austin failed to complete his homework "a lot of times" during the year and Austin "just barely" passed the sixth grade. When comparing Austin's progress to that of the rest of his class, Ferralez noted that he was below average. Ferralez believed Austin was a capable student but was not properly applying himself to his schoolwork. As a result, Ferralez recommended that Austin attend summer school.

Ferralez also noted that Christy made significant efforts to address Austin's deficient school performance. These efforts included substantial contact with Ferralez and working with Austin to complete his homework. During weekends when Christy had visitation, Ferralez would send Austin home with the assignments he had not completed the previous week. Ferralez testified that on the following Monday, Austin would have the assignments completed and exhibited pride in his work. This arrangement did not extend to periods when Austin lived with Richard. Ferralez admitted that Richard had always attended parent-teacher conferences, but stated that she had little other contact with him.

Although acknowledging Austin's struggles in school, Richard did not believe these struggles were greatly concerning. Describing Austin as a "chip off the old block," Richard noted that he experienced the same struggles when he was in school. Richard testified that he would help Austin with his homework, but would not simply give Austin the answers. Richard initially stated that Austin usually completed his homework but that he failed to turn it in the next day. He later conceded that this may not have always been the case because there were occasions when Austin had gone to sleep before Richard could verify that Austin had completed his homework. Richard also testified that his current wife, Amanda, had completed the necessary registration for Austin to attend summer school.

Despite Austin's struggles in school, Richard testified that Ricky was a very good student. Ricky's report card confirmed Richard's testimony, showing that Ricky received good grades during the third grade.

During his testimony, Austin admitted that he did not usually complete his homework. When asked for a reason why he did not finish his assignments, Austin stated that there was "a lot of noise in [the house]." Austin testified that Richard sometimes helped him with his homework, but Amanda did not. Because he did not always complete his homework, Austin had to stay after school on numerous Friday afternoons and was not allowed to participate during some of the school party at the end of the year. Austin also testified that he liked doing his homework at Christy's house because she would help him.

To support her claim that Richard has had difficulty establishing a permanent residence, Christy submitted photographs of each of Richard's recent residences. These photographs revealed each of these homes to be in various states of disrepair and outwardly unkept. Christy also submitted pictures of her current residence, which pictures revealed that it was clean and in good repair. Christy testified that she has lived in this home with her partner for 4½ years. Austin and Ricky each have his own room while staying with her.

Richard's testimony revealed that he moved a total of four times since his marriage to Amanda on June 9, 2007, with at least three of these moves being within the last 3 years. Richard did not believe these moves greatly impacted Austin or Ricky because they remained within the same school district. Richard testified that he is renting his current home with each month's rent going toward the $25,000 purchase price. This home has three bedrooms and two bathrooms. Richard and his sons live in this house with Amanda and her two children from a previous marriage, Austin Foster and Alissa Foster.

While living in Richard's current home, Austin and Ricky share a small bedroom with their stepbrother Austin Foster. Both Austin and Ricky testified that Austin Foster is often fighting and threatening them. Ricky testified that he has frequent "punching fights" with Austin Foster. The boys also stated that Austin Foster is in counseling because he has threatened to "kill everybody." Richard's testimony confirmed that Austin Foster is in counseling, but, according to Richard, Austin Foster's counseling was due to issues related to his biological father's lack of interest in him.

During his testimony, Richard admitted there was fighting and arguing among the children in the house. However, in his opinion, this type of behavior is not unusual among young siblings--whether blood related or not. Richard likened the current behavior in his house to what he experienced while growing up with his three brothers.

Christy also testified regarding her concerns that Austin's and Ricky's health care needs were not being met while they are living with Richard. Christy testified that she felt both Austin and Ricky were overweight and that Richard had not properly addressed this issue. Christy also testified that Austin needs to get braces as soon as possible. When she discussed with Richard the possibility of getting braces for Austin, Richard's response was that he could not afford the cost of the braces. Christy testified that she was willing to do "whatever it took" to get Austin braces. Christy also expressed concerns regarding Ricky's club feet. Although Ricky had received treatment for this condition for many years, Christy was concerned about a recent callous on his foot. According to Christy, Richard was going to set up an appointment to have this evaluated but had not done so.

Richard testified that he will be able to provide health insurance for the children through his current employment. Richard indicated that until this insurance became available, the children were covered under "Kids Connection." Richard believed that his new insurance would cover some of the cost of Austin's braces. Amanda had started to make arrangements with an orthodontist to set up a payment plan for Austin's braces.

During their testimony, Austin and Ricky did not give any preference as to which parent they wanted to live with. However, Ricky stated that he did not like the current custody and visitation arrangement because he wanted to spend more time with Christy.

After taking the matter under advisement, the district court issued an order on July 26, 2012, granting Christy's request for modification. In its order, the district court noted that Christy's current allegations were similar to those raised in her 2007 modification complaint. Focusing its analysis on Austin's school performance and the chaotic state of Richard's home, however, the court found that the totality of the circumstances demonstrated that a material change in circumstances existed. The court also found that it was in Austin's and Ricky's best interests that their physical care, control, and custody be placed with Christy. Richard was ordered to pay child support. Richard has timely appealed.

## ASSIGNMENTS OF ERROR

Richard asserts that the trial court erred (1) by finding that Christy had met her burden of proving that a material change of circumstances had occurred and (2) by finding that it was in the best interests of the minor children to be placed in Christy's custody.

## STANDARD OF REVIEW

Child custody determinations are matters initially entrusted to the discretion of the trial court, and although reviewed de novo on the record, the trial court's determination will normally be affirmed absent an abuse of discretion. *Maska v. Maska*, 274 Neb. 629, 742 N.W.2d 492 (2007); *Mann v. Rich*, 18 Neb. App. 849, 794 N.W.2d 183 (2011).

A judicial abuse of discretion exists when a judge, within the effective limits of authorized judicial power, elects to act or refrains from acting, and the selected option results in a decision which is untenable and unfairly deprives a litigant of a substantial right or a just result in matters submitted for disposition through a judicial system. *Hill v. Hill*, 20 Neb. App. 528, 827 N.W.2d 304 (2013).

On appeal of a trial court order determining child custody, when the evidence is in conflict, the appellate court considers, and may give weight to, the fact that the trial court heard and observed the witnesses and accepted one version of the facts rather than another. *Citta v. Facka*, 19 Neb. App. 736, 812 N.W.2d 917 (2012).

ANALYSIS

Richard argues that the trial court erred when it granted Christy custody of Austin and Ricky. Ordinarily, custody of a minor child will not be modified unless there has been a material change in circumstances showing that the custodial parent is unfit or that the best interests of the child require such action. *Heistand v. Heistand*, 267 Neb. 300, 673 N.W.2d 541 (2004); *Grange v. Grange*, 15 Neb. App. 297, 725 N.W.2d 853 (2006). The party seeking modification of child custody bears the burden of showing a change in circumstances. *Adams v. Adams*, 13 Neb. App. 276, 691 N.W.2d 541 (2005). A material change in circumstances means the occurrence of something which, had it been known to the dissolution court at the time of the initial decree, would have persuaded the court to decree differently. *Heistand, supra*.

Prior to modification of a child custody order, two steps of proof must be taken by the party seeking modification. *Adams, supra*. First, the party seeking modification must show a material change in circumstances, occurring after the entry of the previous custody order and affecting the best interests of the children. *Id*. Next, the party seeking modification must prove that changing the custody is in the children's best interests. *Id*.

Richard argues that Christy has not met her burden to show that there has been a material change in circumstances since the last custody order. Richard believes that little has changed since the previous custody order.

We are well aware that Christy has alleged many of the same reasons for modification in this complaint as she did in her previous attempt for modification. However, we conclude the record reveals that the current circumstances are now of such a state that had the trial court been aware of these circumstances at the time of the original decree or the subsequent order in March 2007, it would have decreed differently.

Much of the evidence adduced at trial related to Austin's educational difficulties. It is clear from the record that Austin experienced great struggles in school during the sixth grade. In fact, Ferralez, his teacher, testified that Austin barely passed the sixth grade and worried that Austin would continue to struggle in junior high. Ferralez also testified that Austin frequently did not complete his homework. Austin confirmed this to be true during his testimony. The record also demonstrates that Christy took substantial efforts to correspond with Austin's teacher and help Austin with his schoolwork during the weekends she had visitation. After weekends with Christy, Austin returned to school with his homework completed and exhibited pride in his work. Although Richard testified that he would help Austin with his homework and checked to make sure it was done on most nights, his testimony conflicted with that of Austin and Ferralez.

While Austin's education was a concern at the last modification trial, his difficulties have seemingly escalated to the point where he is nearly failing. We agree with the district court that circumstances have changed in that Austin is now at a stage in life where he must make progress in order to succeed in his education. We further agree with the district court that this progress is more likely to take place if Austin resides with Christy rather than Richard. The evidence

demonstrates that Christy is willing and able to give the necessary attention to Austin's education to ensure he performs to his potential in school.

The record also shows that there is considerable chaos in Richard's current home. We recognize that evidence was adduced about Amanda and her children living with Richard and his children at the time of the last modification hearing; however, at that time, we found no evidence to show any impact on the children as a result of this living arrangement. In the present proceedings, however, evidence was adduced to show that this living arrangement was having a negative impact on the children. Both boys testified that there is constant physical fighting and arguing taking place in the house and that Austin Foster threatens them. This difficulty apparently stems, in part, from the three boys sharing a small bedroom. Additionally, Austin Foster is currently in counseling due to his disruptive behavior and threat that he would "kill everybody." Austin attributes part of his difficulty completing homework to the noisy and disruptive atmosphere in Richard's home. Christy's home, on the other hand, is much more accommodating--Austin and Ricky have their own bedrooms and the house is well-kept and clean.

It is clear that both Richard and Christy love Austin and Ricky. However, it appears the circumstances have now changed to where Christy's home is a better environment for Austin and Ricky. Therefore, we conclude Christy has met her burden to prove a material change in circumstances.

Having found a material change in circumstances to exist, we must now determine whether it is in Austin's and Ricky's best interests to be placed in Christy's custody. The best interests of a child require a parenting arrangement which provides for a child's safety, emotional growth, health, stability, and physical care and regular and continuous school attendance and progress. Neb. Rev. Stat. § 43-2923(1) (Cum. Supp. 2102); *Donscheski v. Donscheski*, 17 Neb. App. 807, 771 N.W.2d 213 (2009). When deciding custody issues, the court's paramount concern is the child's best interests. *Citta v. Facka*, 19 Neb. App. 736, 812 N.W.2d 917 (2012). Section 43-2923(6) states:

> In determining custody and parenting arrangements, the court shall consider the best interests of the minor child, which shall include, but not be limited to, consideration of the foregoing factors and:
>
> (a) The relationship of the minor child to each parent prior to the commencement of the action or any subsequent hearing;
>
> (b) The desires and wishes of the minor child, if of an age of comprehension but regardless of chronological age, when such desires and wishes are based on sound reasoning;
>
> (c) The general health, welfare, and social behavior of the minor child;
>
> (d) Credible evidence of abuse inflicted on any family or household member. . . ; and
>
> (e) Credible evidence of child abuse or neglect or domestic intimate partner abuse.

In addition to these factors, the Nebraska Supreme Court has held that a court may consider, in addition to the statutory factors, matters such as the moral fitness of the children's parents,

including the parents' sexual conduct; respective environments offered by each parent; the emotional relationship between children and parents; the age, sex, and health of the children and parents; the effect on the children as the result of continuing or disrupting an existing relationship; the attitude and stability of each parent's character; parental capacity to provide physical care and satisfy educational needs of the children; the children's preferential desire regarding custody if the children are of sufficient age of comprehension, regardless of chronological age, and when such preference is based on sound reasons; and the general health, welfare, and social behavior of the child. *Smith-Helstrom v. Yonker*, 249 Neb. 449, 544 N.W.2d 93 (1996).

In this case, it appears that the children have a good relationship with both parents and there is no evidence of abuse inflicted by either parent, although there is evidence that Austin Foster has exhibited violent behavior toward the children in Richard's home. Neither child expressed a strong preference with respect to which parent he wished to reside with, although Austin stated he was better able to complete his homework at Christy's home and Ricky stated he wants to spend more time with Christy. Christy has shown a greater willingness and ability to take the necessary time to ensure Austin progresses educationally. Overall, Christy's home appears to provide a better environment for Austin and Ricky with respect to their safety, emotional growth, health, stability, physical care, and school progress. Therefore, we find that the district court did not abuse its discretion when it concluded that it was in Austin's and Ricky's best interests to be placed in Christy's custody.

## CONCLUSION

After our de novo review of the record, we conclude the district court did not abuse its discretion when granting Christy's motion for modification.

AFFIRMED.